JAMES W. HICKOK *v.* THE FARMERS' AND MECHANICS' BANK, AND MORTON COLE.

[IN CHANCERY.]

*Principal and Surety. Promissory Note. Equitable Estoppel. Chancery. Evidence.*

The request by a surety on a debt to the creditor to commence suit thereon, and secure the debt upon the principal's property, does not impose the obligation upon the creditor to comply with the request, or to make good to the surety the amount that might have been secured by such an attachment.

Neither do the facts that the surety resides out of the state, and is embarrassed and unable to pay the debt, that the bankruptcy of the principal is imminent, and that his personal property is known and easily attachable, that it can be attached without expense to the creditor, and that the surety's counsel is ready to see that the attachment is faithfully made, alter the rule of law in this respect, nor afford the surety any ground of relief against the creditor for not complying with his request to sue the principal, or to attach his property upon a suit already commenced, the service of the writ in which is not completed.

An assurance given by the payee of a promissory note to a surety thereon, at the time of its delivery, without which assurance the surety would not have signed the note, that if not paid at maturity the payee would immediately proceed to collect it out of the principal, accompanied by the fact that the payee suffered the note to remain unpaid for more than a year after its maturity without taking any steps to collect it, or notifying the surety of its non-payment, until after the failure of the principal, notwithstanding it might during that time have been collected of the principal, and the further fact that the principal relied on this assurance, and in consequence thereof omitted to take measures to secure himself, constitutes an equitable estoppel against the enforcement of the note against the surety, and relief will be granted him in that respect by a court of equity.

*Held,* that the proof in this case did not establish the fact that any such assurance was given.

In the examination of witnesses in chancery, the practice of having the questions shown to the witness, and his answers prepared beforehand, and reduced to writing and examined by counsel before coming before the master to testify, severely reprehended.

BILL IN CHANCERY. The bill was dated and sworn to by the orator on the 22nd of September, 1858, and was filed October 4th, 1858, and set forth in substance, that on the 23rd of June,

Hickok v. Farmers' and Mechanics' Bank.

1856, Morton Cole, of Burlington, requested the orator, then a resident of New York city, but at that time transiently in Burlington, to sign with him, as his surety, a promissory note for $1500, of that date, and payable at the Farmers and Mechanics' Bank, of Burlington, four months after date, which note was to be used to renew one of a like amount, held by that bank against Cole and the orator, as his surety; that Cole assured the orator that if he would sign such note as his surety, he, Cole, would promptly pay it at maturity; that before delivering the note to the bank the orator informed the cashier that Cole had agreed to pay the note when it matured, that the debt had been long due to the bank, and that when this note fell due the orator wished to have it collected out of Cole, in case Cole did not pay it; that to this course the cashier assented, and that the orator then delivered the note to the cashier for the use of Cole, with the distinct understanding between the orator and the cashier that the note should be collected out of Cole when it fell due, in case Cole failed to pay it at maturity; that at that time, and for nearly two years thereafter, Cole resided in Burlington, being largely engaged in business, and the owner of sufficient attachable personal property to secure a debt larger than the note above mentioned, and that the reason the orator was anxious to have the note collected, was because the orator was then residing in New York and so situated that he could not look after Cole's pecuniary condition, and that these facts were well known to the Farmers and Mechanics' Bank; that when said note fell due on the 23rd October, 1856, it was not paid by Cole; that the bank did not notify the orator of its non-payment, and wholly neglected to proceed to collect it of Cole, as they had agreed to do; that the orator continued to reside in New York from the date of the note until April 14th, 1858, when he removed to Burlington; that the orator heard nothing in relation to said note from any source after delivering it to the bank, as above mentioned, until in March, 1858, but supposed during all that time that it had been paid by Cole; that in March, 1858, he was informed in New York, by Salmom Wires, Esq., the attorney and one of the directors of the bank, that the note had not been paid, and that a suit had been commenced upon it against the orator and Cole,

in favor of the bank, returnable to the March Term of the Chittenden County Court, then approaching, and that an attachment of the orator's real estate had been made thereon, but the service of the writ had not been completed upon Cole ; that at the time the orator received this notice from Wires, Cole resided in Burlington, and that he then, and for several days thereafter, had in his possession and ownership attachable personal property amply sufficient to secure the said note by attachment; that immediately upon receiving this information from Wires the orator informed Wires, as agent for the bank, and also informed the bank, that he claimed the bank had violated the agreement above set forth in relation to the collection of the note out of Cole at its maturity, and he requested the bank, and Wires, as its attorney, to cause Cole's personal property to be attached in the suit in favor of the bank against the orator and Cole on the note, so that the note might be collected out of the principal, and not out of the surety ; and that at the same time he informed the bank of the fact, which they well knew, that he had no security for having signed said note as Cole's surety ; that the bank wholly neglected and refused to attach Cole's property in said suit, or to take any measures whatever to secure said note against Cole ; that some eight or ten days after the orator so requested the bank to make such an attachment of Cole's property, Cole became wholly insolvent, and all his property was attached by his other creditors, and that no debt could, at the time of bringing the bill, be secured against him ; that the suit in favor of the bank against Cole and the orator, upon said note, was duly entered in court, and was pending at the date of the bill ; that after the maturity of said note, in April, 1857, the bank agreed with Cole to extend the time of payment thereon a reasonable time, to suit Cole's convenience, provided and in consideration that Cole would take up certain other notes, then held by the bank against Cole, upon which one Matthew Cole, an irresponsible person, was surety, and would give new notes for the same with some good endorser in place of Matthew Cole, and that, in pursuance of such agreement, Cole did, in April, 1857, take up the Matthew Cole notes, and substituted for them notes signed by himself and by a responsible endorser, and that the bank, in

pursuance of such agreement, did extend the time of payment upon the note signed by Cole and the orator until March, 1858, when the above mentioned suit against Cole and the orator was commenced.

The bill alleged the necessity of a discovery of the facts relating to the above matters, from Cole and the officers of the bank.

The prayer of the bill was that the Farmers' and Mechanics' Bank might be forever enjoined against the further prosecution of their suit at law upon said note against the orator.

Upon the filing of the bill, verified by the oath of the orator as to the truth of the statements therein contained, a temporary injunction in accordance with the prayer of the bill was granted.

The bill was taken as confessed against the defendant Cole for want of an answer.

The answer of the Farmers' and Mechanics' Bank was sworn to by C. F. Warner, the cashier, for the bank, and was filed February 21st, 1859. In this answer the bank denied the allegations of the bill in relation to the agreement between the cashier of the bank and the orator in regard to the collection of the note at maturity, and stated that the note in question was received by the bank in the ordinary course of business, and without any restrictions or agreements, except such as the note contained upon its face. The answer also denied any agreement for the extension of the note in question.

In regard to the interview between the orator and Wires in New York in March, 1858, the answer stated that the orator then requested Wires to cause Cole's personal property to be attached upon the suit at law upon said note; that Wires informed the orator that the directors were unwilling to institute the requisite search for Cole's small amount of personal property, and that they insisted the orator should take up the note himself; and that the orator then said he would write to the bank and urge the bank officers to cause such attachment to be made, which he did not do; that the orator did not in March, 1858, or at any other time previous to the bringing of the bill, inform Wires or the bank of any violation of any agreement

on the part of the bank in regard to the collection of the note out of Cole at maturity, or that any agreement whatever in regard to the collection of the note had been made.

The answer denied the statements of the bill in regard to the value of the personal property owned by Cole in March, 1858, and stated that all the property owned by him at that time was of very trifling value, and not half sufficient to secure said note by attachment. In other respects the answer substantially admitted the allegations of the bill.

This answer was traversed and estimony was taken on both sides, the purport of which sufficiently appears in the opinion of the court.

During the examination of the orator before the master, the solicitor for the Farmers' and Mechanics' Bank objected to the manner of examining the witness, on the ground that the inter-rogatories were prepared, and the answers written beforehand, and read by the witness in answer to the interrogatories when propounded before the master. Upon this point the orator then testified, that the interrogatories were prepared and presented to him by his solicitor before the examination, and that the orator wrote his answers thereto without consulting with his solicitor, but that since writing them, he had read to his solicitor those answers relating to the alleged agreement between the orator and the cashier of the bank at the inception of the note, and also those relating to the interview between the orator and Wires in New York in March, 1858, but that no part of such answers was suggested by his solicitor. The testimony was taken subject to this objection.

On the 4th of December, 1860, after the testimony had been taken and the cause set down for hearing before the chancellor, the orator asked leave to amend his bill, which was granted, and he then filed certain amendments, alleging that on the 5th of March, 1858, in New York, the Farmers' and Mechanics' Bank, through Wires, its director and attorney, agreed with the orator that as soon as Wires returned to Burlington, the bank should cause Cole's personal property to be attached on the writ in favor of the bank against the orator and Cole, and that the orator relied on such promise, and therefore took no further

steps to secure himself, which he would have taken if it had not been for such promise and his reliance thereon.

Another amendment to the bill was that after this agreement made in New York and Wires' return to Burlington, there was ample time for the bank to have attached Cole's personal property, and to have secured said note thereby.

The bank filed an answer to this amended bill, which was sworn to by S. Wires, for the bank, entirely denying any agreement by the bank, or Wires, to cause Cole's personal property to be attached on the writ upon said note, and asserting that Wires gave no assurance to the orator that he would do anything in connection with the attachment of Cole's property, except in the event of the orator's writing to the bank officers, requesting such attachment, as he promised to do, as stated in the original answer, and the consent of such officers to comply with such request.

Testimony was taken in support of the answer of the bank to the orator's amended bill, and the cause was heard before PIER-POINT, chancellor, at the April Term, 1862.

The chancellor dismissed the bill with costs to the Farmers' and Mechanics' Bank, from which decree the orator appealed.

*E. R. Hard* and *Daniel Roberts*, for the orator.

*Wm. G. Shaw* and *Asahel Peck*, for the defendant, the Farmers' and Mechanics' Bank.

ALDIS J. The orator, as surety for Morton Cole, signed a note to the Farmers' and Mechanics' Bank for the sum of $1500. By this bill he seeks relief from his liability upon the note, and his claim to relief rests upon four grounds, which are thus stated in the brief of his counsel:

" 1st. Upon the understanding, had at the time the note in question was executed, that it should be collected when it should fall due—the failure, not only to collect it, but to notify the orator an unsecured surety, that the note was unpaid, and allowing it to run nearly eighteen months, the orator reasonably believing it to have been paid, until Cole, the principal, had become insol-

31

vent, and the·orator had lost the opportunity of securing himself against loss.

2nd. Upon an agreement between the bank and Cole to extend the time of payment of the note.

3rd. Upon the neglect and refusal of the bank, upon the orator's request under the circumstances stated, to attach Cole's personal property.

4th. Upon the agreement of the bank, through its attorney, Wires, to attach Cole's personal property, and its neglect to do so, relying upon which agreement the orator has suffered loss."

We will consider,

1st. The alleged agreement with Wires in New York. The proof of this rests upon the testimony of the orator. He says that on the 4th and 5th of March he requested Mr. Wires to attach all Cole's personal property upon the writ already issued against him and Cole. Wires objected to doing so, because he did not want to quarrel with Cole. The orator still urged the request. Wires then proposed he should write to Warner, and if Warner would direct it he would do it. The orator said he would think of it, and let him know the next day. The next day he said to Wires he would not write to Warner, as he had not been well treated by him in this business; that Warner had given Cole a year and a half's time on the note, contrary to their understanding. The orator insisted Wires should attach Cole's property—made an earnest appeal to him to do so, as an act of simple justice. Finally, Wires reluctantly consented, and said he would attach Cole's property, if any could be found when he got home.

Mr. Wires testifies in direct contradiction of the material points of Mr. Hickok's statement. He says that in reply to Mr. Hickok's request he said that he personally had no objections to doing so, but that the board of directors insisted that he should take up the note and secure himself; that they were opposed to making search for the odds and ends of Cole's personal property, but if he would write to Warner requesting it, he thought it would be done; that he understood Mr. Hickok to agree that he would write to Warner, and he (Wires) on his part agreed to make inquiry as to Cole's property, and be ready, on the receipt

of the letter and the consent of the bank, to attach ; that Mr. Hickok did not express any unwillingness to write to Warner, or make any claim or complaint that Warner had agreed to collect the note when due, and had not done so.

Thus between these gentlemen there is this plain and direct contradiction upon all the material points in their testimony. Each testifies positively, and to facts inconsistent with the statements of the other.   The contradiction can not be reconciled by saying that one asserts what the other forgets.   The letter of Mr. Hickok to Chittenden corroborates his testimony, and shows that he understood the matter at the time as he now testifies ; while the declarations of Mr. Wires to Mr. Chittenden, and his letter to Mr. Hickok corroborate his account.   The omission to set up these facts in the original bill is entitled to much consideration, and does not seem to be fully accounted for.

The surrounding circumstances and the various suggestions made on behalf of the one and of the other, we have carefully considered.   They do not seem to be at all satisfactory or conclusive, and we are compelled to the conclusion, that at the outset there was a misunderstanding between these parties as to this matter.

As the burden of proof rests with the orator, we must come to the conclusion that he fails to establish the facts stated in the bill by the requisite preponderance of proof.

2nd.   The request to the bank to sue Cole and attach his property is proved.   It is not claimed that such request of the surety obliges the creditor to comply with it, and to make good to the surety the amount that might then have been secured by attachment.   It has long been settled in our courts to the contrary. But it is claimed that in this case there are circumstances which give a peculiar force to this request, and entitle the orator to relief :   that the orator resided out of the state—that the bankruptcy of Cole was imminent, and his personal property was known, and easily attachable—that it would have made no expense to the bank—that the orator's counsel was ready to see that it was faithfully done—and that.the orator was then embarrassed, so that he could not pay the note, were circumstances that commended Mr. Hickok's request to the most favorable and

courteous consideration of the bank ; but we do not think that they furnish any sufficient ground for making this case an exception to the general rule, or justify us in establishing a precedent that would tend to break down a plain boundary line of the law. The rule as now settled is a plain and practical one, and well understood by business men. If we begin to make exceptions to it in cases that seem to involve peculiar hardship, it will soon become unsettled and uncertain.

3rd. It is also claimed that the bank agreed with Cole to extend the time of payment.

Upon this point the orator relies on the testimony of Mr. Cole and the circumstances which it is claimed corroborate his testimony : the defendant on the testimony of Warner, Wires, and Wales.

Without recapitulating the evidence on this point, we deem it sufficient to say, that the testimony of Mr. Cole and the circumstances relied on are quite insufficient to outweigh the counter evidence of the defendant, and the improbability that the bank would agree to an act which the directors and the cashier must well have known would discharge the surety.

4th. This brings us to the more important and difficult point in the case,—the alleged agreement or assurance of the cashier at the time of the execution of the note, that he would attend to the collection of the note when it fell due—the reliance of the orator upon this assurance—the failure of the bank to do as agreed, and the consequent loss to the orator of all security against Cole.

If this alleged agreement or representation of the cashier were to be treated as a part of *the contract*, and to vary *its* terms, it is clear that no parole evidence could be admitted to prove it.

Neither is there any evidence to prove that in the making of the agreement, either fraud or falsehood was intended.

But the orator claims to have proved, that at the time of the execution of the note he was known to be merely a surety on it, that he resided in the city of New York, and was therefore unable to keep himself informed of the pecuniary circumstances of Cole, and to protect himself by getting security if Cole should become embarrassed ; that the note had been long due and often

renewed before, and the orator was unwilling to remain liable as a surety ; that Cole promised to pay it punctually when it became due ; that the orator told the cashier Warner of all these facts, and that he would not then renew the note unless the cashier would give him the assurance that if the note was not paid at maturity the cashier would attend to the immediate collection of it, and collect it out of Cole's property; that the cashier did give him such assurance ; that he relied upon it, and in conse- quence of his reliance on it did not, when the note fell due, or afterwards, take any measures to secure himself from loss on account of so being surety ; that the bank neglected to collect it for a year or more after it matured, during all which time it · could have been collected of Cole, and that he had no notice of such neglect until Cole had failed and the orator could obtain no security.

The defendant claims that if all these facts are fully proved they do not amount to a defence. We think, however, that if these facts are proved they should operate as a discharge of the surety, upon the ground that the defendant by its assurances to the orator, has lulled him into a false security—has induced him to omit to do what he would otherwise have done, viz : pay the debt and secure himself by attaching Cole's property, or other- wise obtaining security ; and has thus subjected him to the loss of the whole debt. It is properly an equitable estoppel.

Suppose that Hickok had gone to the bank a few days before the note fell due, and said to the cashier :  " The note I signed as surety for Cole becomes due on the 24th of October. I am about to go away, and shall not return till next year. Cole is now solvent, but may not long remain so. I wish before I leave to provide means for the payment of the note when due, so that I can proceed against Cole and secure myself, and shall do so unless you will proceed to sue Cole and attach his property as soon as the note is due ;" and that the cashier had replied to him, " You need not provide for the payment of the note, for if Cole does not pay it at maturity we will sue him and attach his property, and so secure the debt. You need not trouble yourself further about it ;" and that relying on this assurance he had left the state and taken no further trouble about it. Would it not be

gross injustice for the bank to neglect the collection of the debt till Cole had failed, and deceive the orator by this assurance, and still claim to hold him liable as surety ?   Clearly so.   It is not the request to the bank, or any notice the surety could give, that binds them to proceed against the principal ; it is their assurance thus given and thus relied upon that binds them, and which they may not omit to make good except at their own risk.   If they *assume* the risk, which the surety will not run, of extending for-bearance to the principal when they have promised not to forbear but to sue and attach, and when they know the surety relies upon the promise, and therefore does not secure himself, they must bear the loss that ensues from it, and not seek to charge it upon the surety.

Nor can it make any difference that this assurance is given when the note is executed, instead of just before or after it falls due.   It is not the time when the assurance is given that is mate-rial, but the deceiving of the surety by it.   No intent to deceive may exist when the assurance is given ; but the surety is induced by it to forego what he would otherwise have done for his own protection, and thus is in substance deceived.

This principle of obvious justice has been recognized by our own courts, and in the decisions of our sister states.   See *Hoge-boom* v. *Herrick*, in the 4th Vt. 131, where the principle is rec-ognized as just, though the facts are not found so as to make an application of it to the case.   Judge Redfield also, in *Wilson* v. *Green*, 25 Vt. 450, recognizes it.   In Massachusetts, *Harris* v. *Brooks*, 21 Pick. 195, and *Carpenter* v. *King*, 9 Met. 511, stand upon the same principle.   See, also, 7 Watts 523 ; 2 Leading Cases in Eq. 371:

It therefore becomes necessary to consider the evidence to sus-tain and to disprove this alleged assurance from the bank through Warner to the orator.

As to the following facts there is substantially no controversy : That Hickok was surety for Cole, and this known to the bank ; that he resided in New York from August, 1854, to April, 1858, and that his residence in New York was known to the bank in July, 1856, when this note was executed ; that Hickok signed as surety for Cole as early as August 6th, 1853 ; that that original

note was frequently renewed between that date and July, 1856, and twice during the orator's residence in New York, viz: on the 13th November, 1854, and the 20th December, 1855 ; that the note here in controversy was given June 24th, 1856, for the renewal of the one given December 20th, 1855, on which the orator was surety for Cole.

Mr. Hickok testifies in substance that at the time of the renewal of this note he was reluctant to renew it; that he inquired of Cole as to his circumstances, and became satisfied that he would be able to pay it when due, and that it would be safe for him (the orator) to sign it, and then told Cole that he would sign it if he would pay it when due, but that before he signed it he must see Warner, the cashier, and have an understanding with him that he should collect the note when due, and that as he was to be out of the state he would not have it lie over due, as it had before ; that they went to the bank, and he then told Warner, in the presence of Cole, that he (the orator) should be out of the state for a long time to come, and would not sign the note except with the understanding that it was to be collected when due ; and that if he could have the understanding with Warner that it should be collected when due, he would sign the note. Warner replied that the note should be collected when due, or words to that effect. Now the turning point of the evidence and of the case is, what Warner said to Hickok. What Hickok said to Warner could not bind the bank. It is the assurance that Warner gave to Hickok in reply, that we must ascertain, and what Hickok said is of no consequence, except so far as it shows what Warner must have understood and assented to. When Mr. Hickok says that Warner said the note should be collected when due, *or words to that effect,* it is obvious that he states what he understood was the substance of the reply, rather than its language. A slight change of phraseology would most materially modify the meaning, and leave it to signify nothing more than a *desire* on both sides that it might be collected when due.

Again, there is nothing in what Hickok says to Warner, or in Warner's answer, to indicate that it should be collected by suing

Cole and attaching his property ; but this is the allegation in the bill as sworn to, and is important as directing Warner's attention to the all-important consideration that if not so collected, and Cole should fail, the neglect would operate to Hickok's injury. Indeed, it is obvious that nothing was directly and plainly said by Hickok to Warner to the effect, that Warner should of his own motion, and without further direction, collect the note out of Cole when due, and relieve Hickok from further trouble or attention to it. That may have been, and doubtless was, Mr. Hickok's intent, but he did not directly and expressly say so, and call Warner's attention to that exclusive responsibility on his part.

We can not but doubt, even upon the conversation as stated by Mr. Hickok, whether Warner understood and intended to give the assurance to Hickok that he would, when the note fell due, assume the responsibility without further directions of suing and attaching Cole's property for the benefit of Hickok, or else give notice to Hickok and require the collection of him. It is doubtless true that sureties frequently express the desire to cashiers that the notes they sign should be collected if not paid, and that cashiers in reply express a similar wish or intent even. But it would be putting a strained and unjust construction upon such conversations to say that thereby an assurance was given the surety that the bank would immediately upon the maturity of the note, and without further request from the surety, proceed to sue and attach the property of the principal for the benefit of the surety, and that the surety might safely rely that this would be done, or he be discharged if it was not done. To establish the giving of such an assurance it should plainly appear that both parties clearly understood that such was the meaning of their language, and an interpretation that creates so serious and unusual a liability, ought not to be given to language that does not either fairly or plainly express it, or require it as the natural and obvious inference.

Mr. Cole states the language used by Mr. Hickok thus :   " If Warner would see that the note was paid at maturity he would sign it," and by Mr. Warner thus : " that the note should be paid

at maturity, and that he would see to it." Again "he would not sign it unless Warner would see that the note was collected at maturity or paid at maturity."

"Warner and I both agreed that the note should be paid and taken up at maturity." This testimony seems more explicit than Mr. Hickok's that Warner should "see to" or proceed with the collection.

Taken in connection with the fact that Mr. Hickok resided in New York and gave that as a reason why he wished to have Warner take upon himself this duty, the natural inference would be that he relied upon Warner to collect the debt when it fell due; and if this was all the evidence in the case we might perhaps feel required to put this construction upon it. We say this even with some hesitation, for the assuming of such a responsibility would be so unusual—such an assurance would be so extraordinary—that it would seem that there ought to be something in the conversation to show explicitly that the idea was fully comprehended by Warner that he was to act without further request and for the benefit of Hickok, and that Hickok understood that he relied upon Warner's so acting, and was not expected to guard his own interests. But on the part of the defendant, Mr. Warner testifies that he made no agreement with Mr. Hickok as to the collection of the note at its maturity—that Hickok attached no condition to his signing the note—that it was taken in the ordinary course of business, as a renewal. On cross examination he says that he has no recollection of any conversation with Hickok or Cole when the note was renewed. Besides this testimony of Warner, we can not overlook the important consideration that such an agreement on the part of the bank would be unusual and contrary to the practice of banks; and that there was no motive for their assuming such a singular and burdensome responsibility, for they already had the note of Cole and Hickok for the debt and free from any such duty to Hickok.

It seems to us highly improbable that the Bank would assume such a burden on itself when it had nothing to gain by it.

Comment has been made by counsel upon the manner in which these witnesses have testified, and the bias, and the interest they are under. Cole seems to have a strong hostility to the bank

and its directors, which may not be unreasonably thought to affect his testimony. The other two seem to testify with fairness and according to their honest convictions and recollections. The practice which seems to have been adopted by the orator in this case, of having the questions shown to the witness, and his answers prepared before hand and reduced to writing, and examined by counsel before coming before the master to testify, is one not allowable by the practice in chancery in this state, of pernicious tendency, as tending to color the testimony and adapt it to the necessities of the case, and justly subjecting the evidence so taken to suspicion. Although we do not see in the orator's testimony so taken, anything to indicate that it was either resorted to or used in this instance for an improper purpose, yet we feel that the precedent ought not to pass without receiving the censure of the court.

When witnesses testify in contradiction of each other, as in this case, Hickok and Cole on one hand, and Warner on the other, the mind naturally turns to the surrounding circumstances, to the probabilities of the two stories, and to the interests and motives of the parties as furnishing the most satisfactory means of ascertaining the truth. These we think are with the defendant.

That the bank already held Cole and Hickok's note, and had no motive for making such an agreement; that such an agreement was burdensome, involving the bank in trouble, expense, and perhaps litigation; that it was unusual and against the interest and the custom of banks: these are circumstances of much weight, and require strong and positive evidence to counterbalance them. When we add to this the positive testimony of Warner, we feel that the testimony of Hickok and Cole is not sufficient to establish that preponderance of proof which is requisite to sustain the bill.

The case is remanded to the court of chancery with a mandate affirming the decree of the chancellor.