SIMS *v.* EVERETT.

Opinion delivered June 1, 1914.

1. TRIAL—EFFECT OF BOTH PARTIES ASKING INSTRUCTED VERDICT.—Where each of the parties to an action requested the court to direct a verdict in his favor, and requested no other instruction, the effect is an agreement that the issue be decided by the court, and the decision has the same effect as a verdict of the jury would have had. (Page 201.)

2. SURETYSHIP—RELEASE OF SURETY—STATUTE.—At common law, a surety could not compel a creditor to sue the principal debtor, and become discharged by the failure of the creditor to do so, and Kirby's Digest, § § 7921 and 7922, giving the surety that right, is in derogation of the common law and should be strictly construed. (Page 201.)

3. SURETYSHIP—DISCHARGE OF SURETY—NOTICE BY SURETY.—Kirby's Digest, § § 7921 and 7922, which provide that the surety on any bond, note, etc., may at any time after action has accrued thereon, by notice in writing, require the person having the right of action to forthwith commence suit against the principal debtor, must be complied with strictly, and unless the surety gives the required notice in writing, he is not discharged by the mere inactivity of the creditor or his failure or refusal to sue the principal debtor. (Page 203.)

Appeal from Independence Circuit Court; *R. E. Jeffery,* Judge; reversed.

*Samuel M. Casey,* for appellants.

The statute provides that the surety on a note may request the holder to bring suit against the principal, and if he fails to do so within thirty days from the time of *written notice,* the surety will be exonerated from liability. Kirby's Dig., § § 7921, 7922. There is no contention that written notice was given; hence, there is no release under the statute.

If oral notice is permissible, as is contended under the opinions of this court in 34 Ark. 44, and 35 Ark. 463, the sureties could not claim a release from liability until they had shown clearly the nature and terms of the notice, that it was given after the notes were due, that the principal was then solvent, and that they have been damaged by reason of the delay of the holder of the note. There is nothing in the record proving any of these facts. 6 Ark. 353.

*Dene H. Coleman,* for appellee.

1. Both parties having requested a peremptory instruction, the finding of the trial court will not be disturbed either if there was no evidence to sustain appellants' cause of action, or if there was any evidence to

sustain appellees' defense. 162 S. W. 641; *Id.* 721; 97 Ark. 91; 100 Ark. 166.

2. It is admitted that appellees were merely sureties. Where a surety either *verbally* or in writing requests the holder of a note to sue the principal, and he fails to do so, and the principal afterward becomes insolvent, the surety is thereby discharged. 6 Ark. 352; 34 Ark. 45. See also 4 Pa. St. 348; 65 Ark. 552.

McCULLOCH, C. J. This is an action to recover from appellees, J. M. Everett and W. A. Halliburton, the amount of two negotiable promissory notes executed by them as sureties for J. T. Halliburton to O. B. Edmondson, now deceased. Edmondson, by written endorsement on the back of each of the notes, assigned the same to the Union Bank & Trust Company and the latter in turn assigned same to appellant, Albert Sims, who instituted this action; but subsequent to its institution said Union Bank & Trust Company, as the executor of Edmondson's estate (he having died), was joined as plaintiff.

The case originated before a justice of the peace, and there were no written pleadings; but the two appellees, as sureties, defended on the ground that they requested the payee of the note to sue, and that he failed to do so, and by reason thereof the principal had become insolvent so that his liability could not be enforced.

The only evidence tending to support that defense, if it be held to be a good defense, is that of witness Christopher, who stated that he heard a conversation between Edmondson and one of the sureties, in which the latter told Edmondson "to collect his money, that it was due and that he didn't want to have to pay it."

The only testimony which it is claimed tended to establish the solvency of the principal debtor at or about the time the request was made was that of a witness who stated that he heard a conversation between Edmondson and the principal debtor, in which the latter said that if required he would sell his wagon and team to pay the notes and that Edmondson told him that he didn't want him to do so, as the sureties on the notes were good.

The court was requested by the parties on both sides of the controversy to give a peremptory instruction, and the court refused to grant appellant's request, but instructed the jury to return a verdict in favor of appellees, the defendants.

The case, therefore, stands here as if the jury had, upon correct instructions, returned a verdict in appellees' favor, and the sole question is that of the legal sufficiency of the evidence. *St. Louis S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71.

There was testimony tending to qualify the interest of appellant Sims in the notes and to show that the original payee had an interest therein; but inasmuch as there was a valid assignment in writing he was authorized to sue, and appellees can not question the consideration upon which the assignment is based. Moreover, the executor of the original holder is made party, and that eliminates any question of the relative interests of the parties in the recovery.

The statutes of this State provide that "any person bound as surety for another in any bond, bill or note, * * * may, at any time after action hath accrued thereon, by notice in writing, require the person having such right of action forthwith to commence suit against the principal debtor," and that "if such suit be not commenced within thirty days after the service of such notice, and proceeded in with due diligence, in the ordinary course of law, to judgment and execution, such surety shall be exonerated from liability to the person notified." Kirby's Digest, § § 7921, 7922.

It is not shown that the terms of the statute were complied with, but it is contended that noncompliance with the verbal request was sufficient to exonerate the sureties if the principal was solvent at the time the request was made and afterward became insolvent.

The trial court evidently based the decision upon that view of the law.

It is said that the law has been so declared in three of the decisions of this court. *Hempstead* v. *Watkins,*

*Admr.,* 6 Ark. 317; *Thompson* v. *Robinson,* 34 Ark. 44; *King* v. *Haynes,* 35 Ark. 463.

There are statements to that effect in the opinions in the two cases last cited, but in each case it was mere *dictum,* for the reason that the point was not involved and the court did not decide it.

The case of *Hempstead* v. *Watkins, Admr., supra,* was cited in each of those cases as supporting the statement; but the point was not decided in that case.

In the case last referred to notice had been given in the manner provided by statute, but had not been complied with, the suit brought within the time specified in the statute having been instituted by the plaintiff in the wrong capacity. After the expiration of the statutory time for complying with the notice another suit was instituted, and judgment was rendered against the principal and sureties; and subsequently the sureties filed a bill in the chancery court to restrain the enforcement of said judgment against them. The point of the case was whether or not the sureties had any remedy in a court of equity which was not barred by the judgment at law, and the court decided that the judgment at law did not bar the sureties of their equitable remedies and that the chancery court had jurisdiction to grant relief to the sureties against the enforcement of said judgment and following the decision of the New York court in the case of *Pain* v. *Packard,* 13 Johnson 173, said that "the statute is but declaratory and an extension of an existing and an originally equitable remedy, and which has been adopted and converted by courts of law into a subject of legal cognizance."

In *Thompson* v. *Robinson* the surety requested the payee in the note to sue the principal debtor and attach the property of the principal, and, after judgment, instituted action in chancery to restrain the enforcement. The court held that no ground for relief was shown, for the reason that there appeared no ground for attachment of the property of the principal debtor. The court said that mere delay or neglect to sue, without notice, would

not discharge the surety, but that "if, after the debt was due, the surety, verbally, or in writing, request the creditor to sue the principal, who is then solvent, and the creditor fail to do so, and the principal afterward becomes insolvent, the surety is thereby discharged."

*King* v. *Haynes* was a suit in equity to enjoin the enforcement of a judgment against a surety on the ground that the creditor had extended the time of payment without his consent; but this court held that there had been no extension for a definite period upon a valid consideration and the surety was not discharged. Mr. Justice EAKIN in the opinion of the court stated the rule announced in *Hempstead* v. *Watkins, supra,* but held that the proof was not sufficient to bring the case within that rule.

So, it will be seen that in each of those cases the announcement of that rule was *dictum.*

It is clearly against the great weight of authority, and we think it also inconsistent with other decisions of this court.

We have held that the statute on the subject is in derogation of the common law and of the contractual rights of the parties to such instrument and should be strictly construed. *Cummins* v. *Garretson,* 15 Ark. 132; *Thompson* v. *Treller,* 82 Ark. 247.

An examination of the authorities discloses the fact that there was no such rule at the common law and that in the absence of a statute the surety can not compel the creditor to bring suit against the principal and is not discharged by the failure of the principal to do so.

Mr. Brandt calls attention to the few cases holding to the rule above announced, but says that it is contrary to the great weight of authority, and cites numerous cases in support of that statement. "The great majority of cases on the subject hold," he says, "in the absence of any statutory provision, that if after the debt is due the surety request the creditor to sue the principal, who is then solvent, and the creditor fails to do so, and the principal afterward becomes insolvent, the surety is not

thereby discharged. The ground upon which these decisions rest is, that the principal and surety are both equally bound to the creditor, who may have taken a surety in order that he might not have to sue the principal. If the surety desires a suit brought against the principal, he may himself pay the debt, and immediately sue the principal. The contrary doctrine is an innovation, and was unknown to the common law." 1 Brandt on Surety & Guaranty, § 265.

The doctrine seems to have originated with the case of *Pain* v. *Packard, supra,* decided by the New York Court of Errors in 1816.

Chancellor Kent, in the case of *King* v. *Baldwin,* 2 Johnson's Chancery Reports, 554, refused to follow the rule announced in *Pain* v. *Packard,* and on appeal the Court of Errors reversed his decision by a divided court, the deciding vote being cast by the Lieutenant Governor, who was a layman.

The New York courts, in later decisions, have recognized the rule announced in *Pain* v. *Packard,* but almost invariably have done so with protest against its correctness.

The case has been condemned by nearly all the courts which have had occasion to discuss the law on the subject.

Chief Justice Parker, speaking for the Massachusetts court in *Frye* v. *Barker,* 21 Mass. 381, said:

"We never have adopted the law stated to be settled by the New York case of *Pain* v. *Packard,* that a surety may discharge himself, if upon request the creditor does not sue the principal. * * * The cases cited of a discharge to the surety, where the principal may still be holden, are chiefly cases of obligation to perform some duty other than the payment of money, where the terms of the contract are changed by the obligee without the consent of the surety. * * * There seems to be no reason, in the case of money contracts, for discharging the surety because the promisee neglects to sue the principal, for the surety may pay the debt and then bring an action himself."

In the case of *Inkster* v. *First National Bank,* 30 Mich. 143, Mr. Justice Christiancy, speaking for the court, said:

"The case of *Pain* v. *Packard,* 13 Johns. 174 (which has been followed in New York, not without some vigorous protest, and to some extent in some other States), was, we think, a clear departure from the common law; and we find nothing in the English decisions to warrant the qualifications of a surety's liabilities there recognized."

Many other decisions discuss the doctrine laid down in *Pain* v. *Packard,* and expressly decline to follow it, declaring it to be an innovation. *Davis* v. *Huggins,* 3 N. H. 231; *Dane* v. *Corduan,* 24 Cal. 157; *Langdon* v. *Markle,* 48 Mo. 357; *Hickok* v. *Farmers' & Mechanics' Bank,* 35 Vt. 476; *Jenkins* v. *Clarkson,* 7 Ohio, 265; *Stout* v. *Ashton,* 5 T. B. Monroe (Ky.) 251; *Nichols* v. *McDowell,* 14 B. Monroe (Ky.) 6; *Gage* v. *Mechanics' National Bank,* 79 Ill. 62; *Huff* v. *Slife,* 25 Neb. 448.

Those cases hold, in effect, that, in the absence of statute, the surety has no right to require the creditor to proceed against the principal and that a failure to sue upon request does not discharge the surety.

In *Stout* v. *Ashton, supra,* where it was proved that the surety, who had requested the payee to sue the principal, insisted upon suit being brought, the court said:

"We can not concur with the court below, by supposing the surety to be released by the mere laches, or neglect, of the obligee to bring suit. No case which has come under our notice goes that far. On the contrary, it is well settled that mere delay in bringing suit, by the obligee, though urged to do so by the surety, does not discharge the surety; and for a good reason. The surety has undertaken positively to pay the debt. If his obligee will not sue, and he is in danger, he can relieve himself by fulfilling his obligation; that is, by paying his debt, and taking the whip into his own hands, and pursuing his principal."

In the other case cited above from the Kentucky Court of Appeals it was said:

"If he (referring to the surety) has an equitable right to require the creditor to sue and coerce the debt out of the principal, the extent of that right, and the manner in which he can avail himself of it, have been defined and prescribed by statute, and he can not avail himself of it in any other mode."

In Ohio there is a statute on the subject similar to ours, and the Supreme Court of that State in the case above cited said:

"Since this statute was passed, the common law rule has not been in force in this State; and it is unnecessary to inquire what its provisions are, for it has given place to the statute, and is repealed by it, if any such rule existed as that which would discharge a surety who gave the creditor notice to sue the principal, *by parol,* if the creditor did not proceed accordingly. The statute of Ohio requires the notice to be *in writing.*"

We are convinced, therefore, that the *dicta* contained in the three decisions referred to in the beginning are erroneous and should not be allowed to control in the decision of this case on the question presented. They are, therefore, disapproved, and the rule is announced that the statute on this subject controls, and unless complied with the surety is not discharged by mere inactivity on the part of the creditor or failure or refusal to sue the principal.

The question, whether or not the creditor may waive the form of the notice and accept verbal notice, is not raised in the present case, and it is left for decision in some case in which it is directly raised.

The judgment of the circuit court is therefore reversed and judgment will be entered here in favor of appellants for the amount of the notes sued on with interest. It is so ordered.