GREENE COUNTY, Appellee, v. CITY BANK OF JEFFERSON et al., Appellants.

**PRINCIPAL AND SURETY: Liability of Surety—Dissipated Funds.**
1  Sureties on a bond to indemnify a county for deposits of public funds are not liable for deposits already lost to the county by reason of the insolvency of the receiving bank.

**ALTERATION OF INSTRUMENTS: Materiality.** Sureties on a bond
2  may not escape liability because of the correction of an erroneous date in the bond.

**PRINCIPAL AND SURETY:** Discharge of Surety—Failure to Present Preferred Claim. Failure of the county to have its deposits of public funds declared a preferred claim does not release the sureties on their bond to indemnify the county against loss of such deposits.

**COUNTIES:** Fiscal Management—Recovery of Wrongful Deposit. A county is not estopped from recovering its own funds by the fact that the deposit was illegal, and that the illegality was participated in by its own officer.

**COUNTIES:** Fiscal Management—Lost Deposits—Estoppel. The act of a county in *filing a claim* against an insolvent estate for lost deposits of public funds does not work an estoppel to enforce liability against those persons who are personally liable for the debts of the insolvent bank.

*Appeal from Calhoun District Court.*—E. G. ALBERT, Judge.

SEPTEMBER 28, 1923.

REHEARING DENIED DECEMBER 14, 1923.

ACTION to recover public funds. Appeal from the ruling of the court sustaining a demurrer to portions of the separate answers of Wright, Gouger, and Colby, and from the ruling of the court striking from the answer the affirmative allegations of Minnie B. Haag and W. W. Anderson. The parties named appeal.—*Reversed on appeal of bondsmen; affirmed on appeal of Haag and Anderson.*

*Healy, Thomas & Healy, Adams & Hise, Lee & Robb, J. A. Henderson, Wilson & Harris, W. M. Osborn,* and *Johnson, Donnelly & Lynch,* for appellants.

*E. G. Graham* and *Salinger, Reynolds, Myers & Cooney,* for appellee.

ARTHUR, J.—I. This is an action in the name of the county against the City Bank of Jefferson, Iowa (a private banking institution), as a depository of public funds, and M. G. McDuffie, Minnie B. Haag, and W. W. Anderson, partners, and the two latter as former partners, who attempted to withdraw from the banking copartnership without notice to creditors or the public,

and L. C. Wright, John Gouger, and F. G. Colby, sureties, upon the bond given by the bank to the county, to indemnify it against loss on account of public funds deposited therein. Minnie B. Haag and W. W. Anderson, on their behalf, and the sureties for themselves, filed separate joint answers to plaintiff's petition. The sureties upon the bond appeal from the ruling and judgment of the court upon a demurrer to Counts 2, 3, 10, and 11 of plaintiff's petition, and Minnie B. Haag and W. W. Anderson appeal from the ruling of the court striking all of the affirmative allegations of their separate answer to the petition.

It is alleged in the petition that W. V. Wills qualified as county treasurer of Greene County on January 2, 1917, and again on the same date in 1919; that, during both his first and second terms, he designated appellant as a depository of public funds, and that the board of supervisors, by separate, appropriate resolutions, authorized him, as treasurer, to deposit in the defendant bank a sum not to exceed $30,000, upon the execution by the bank of bonds in the form and penal sum required by statute; that funds were deposited by the treasurer during the period of his incumbency of the office at various times, the first item of $16,348.41 being deposited July 2, 1917; that, on July 20, 1920, there were on deposit public funds to the credit of the general account of the treasurer in the sum of $44,608.13, and a further sum of $15,000, deposited July 17, 1919, and evidenced by a certificate of deposit. Judgment is asked against all of the defendants for the full amount due the county.

It is further alleged in the petition that the defendants Minnie B. Haag and W. W. Anderson, as partners with M. G. McDuffie, were, on February 12, 1917, the sole owners of the bank, and that on said date an attempt was made to dissolve said copartnership, Minnie B. Haag and W. W. Anderson disposing of their interest therein, and attempting to withdraw therefrom, without notice to appellee or the public, at which time an agreement in writing was entered into, by the terms of which the retiring partners consented that no notice be given. It further appears from the allegations of the separate answers that McDuffie, as sole owner of the bank, made a general assignment, on July 21, 1920, to S. J. Sayers, for the benefit of creditors. We will first dispose of the appeal of the sureties.

The bond sued upon bears date October 1, 1919; but appellee alleged in its petition that it was delivered to the treasurer on July 1, 1920, filed with the county auditor on August 7th, and approved by the board of supervisors on September 2d following. The sureties alleged in their separate answer that all of the funds deposited by the county treasurer and not withdrawn by him prior to the execution of the bond were, because of the insolvency of the bank, wholly dissipated and lost to the county, prior to the execution and delivery of said bond, if same was, in fact, ever delivered, which they deny. The court sustained appellee's demurrer to this division of the answer. In this we think the court erred. Much significance is given by counsel for appellee to the use of the word "now" in the bond, which provided:

1. PRINCIPAL AND SURETY: liability of surety: dissipated funds.

"The condition of these obligations is such that, if the said City Bank of Jefferson shall well and truly pay to the treasurer of Greene County, on demand, all sums of money now or hereafter deposited in said bank by W. V. Wills, treasurer of said county, * * *."

The bond was evidently executed in pursuance of Section 1457 of the Code, and of the resolutions of the board of supervisors; but it was also competent,—whether a necessary part of the statutory bond or not,—for the sureties to undertake to indemnify the county against loss on account of funds then on deposit in said bank; and this they apparently undertook to do. *Sawyer v. Stilson*, 146 Iowa 707. If, however, the deposits made had, by reason of the insolvency of the bank, been wholly dissipated and lost to the county, nothing further appearing, we are of the opinion that, notwithstanding the reference in the bond to prior deposits, the sureties could not be held to have contemplated or intended to assume liability therefor. The word "now" evidently referred to previously deposited funds, but only to such as, within the meaning of the law, were then in the bank. *Fremont County v. Fremont County Bank*, 138 Iowa 167. What is here said is based strictly upon the admissions of the demurrer. With the question of proof we are not now concerned. The bank was apparently a going concern at the time the bond was executed.

II.  Appellants further alleged a material alteration in the bond: that is, that the date of the instrument, when signed, was "1920," and that, when presented upon the trial, it bore date "1919."  As we have already indicated, the copy of the bond set out in the abstract bears date October 1, 1919, and it was presented to the county treasurer on or about July 1, 1920, filed in the office of the county auditor, and approved by the board of supervisors shortly thereafter, on separate dates.  The change in the date of an instrument may constitute such a material alteration as will defeat recovery thereon; but we are of the opinion that the alteration in the date of the bond in question, if made as charged, is not a material one.  The bond took effect only upon delivery.  It was not necessary that same be dated at all.  If it was originally dated "1920," the date was erroneous.  It was filed prior to October 1st of that year.  The liability of the sureties was in no wise affected by the alteration.  Their liability did not commence prior to the delivery of the instrument. The demurrer to this division of the answer was properly sustained.

*2. ALTERATION OF INSTRUMENTS: materiality.*

III.  Defendants alleged in one count of their answer that all of the deposits made in the defendant bank prior to the execution and delivery of the bond, if same was in fact delivered, were made illegally and without authority; that the officers of appellee knew that the treasurer, in making such deposits, was acting illegally and without authority; and that, therefore, a trust arose in favor of appellee, entitling it to have a preferred claim against the assignee established therefor; that appellee filed a general claim only, and failed and neglected to demand that same be established as a preferred claim; and that, because of such failure and neglect upon the part of the officers of appellee, appellants are discharged from liability as sureties upon the bond.  No authorities are cited to sustain the contention of counsel at this point, and we know of no rule of law or equity under which they are entitled to claim a discharge or release from liability on account of the alleged failure and neglect of appellee. Indeed, the rule seems to be to the contrary.  See *Union Mut. Ins. Co. v. Page,* 65 Okla. 101 (164 Pac. 116); *Sims v. Everett,*

*3. PRINCIPAL AND SURETY: discharge of surety: failure to present preferred claim.*

113 Ark. 198 (L. R. A. 1918 C 7, and note). The mere failure of appellee to file a claim for preference in no sense released the sureties from their obligations under the bond. Diligence in such cases is not required of the obligee. Had appellants desired, it would seem that they might have paid the claim of appellee and themselves been subrogated to its rights against the assignee and the assets of the insolvent bank in his hands. The demurrer to this count of the answer was properly sustained.

IV. We come now to consider the propositions urged by the appellants Minnie B. Haag and W. W. Anderson upon their appeal from the ruling of the court striking the affirmative allegations of their separate joint answer. As already stated, the county treasurer, on or about the 17th day of July, 1919, deposited $15,000 in the defendant bank, and received a certificate of deposit therefor. This certificate was payable to the order of the county treasurer, interest to be paid upon the amount represented thereby at 5 per cent per annum, if left in the bank for a period of 12 months. The treasurer, of course, had a right to demand payment of this certificate at any time.

4. COUNTIES: fiscal management: recovery of wrongful deposit.

Appellants plead and rely upon an estoppel, to defeat the collection of this item. Appellants tacitly concede that their failure to give appellee notice of the dissolution of the partnership may operate to estop them from denying liability to appellee on the bond. They assert, however, that, if an estoppel arose by reason of the failure to give proper notice of the dissolution of the copartnership, the county is also estopped by reason of the illegality of this deposit, which they allege is in the nature of a loan. Conceding, for the purpose of the argument only, that the deposit was illegal, the illegality on the part of the county treasurer was participated in by the defendant bank, and in no sense operated to deprive the county of its right to maintain an action against the bank therefor. Appellants concede that McDuffie, the owner of the bank at the time of the assignment for the benefit of creditors, is liable. Unless the county is estopped to pursue its remedy against the bank and against these appellants, then, conceding that their liability rests solely upon the ground of estoppel, the claim asserted of an estoppel against an estoppel does not follow. If the county is estopped

to maintain an action against appellants, that is the end of the matter. If, on the other hand, the county is not estopped, there cannot be an estoppel against an estoppel, and the doctrine has no application here. Whether these, with other facts, if properly pleaded, might defeat recovery in this case, we have no occasion to consider. What we have here said is based solely upon the record before us. The motion to strike this defense was properly sustained.

V. As before stated, appellee filed a claim with the assignee of the bank, without asking its establishment as a preferred claim. One of the defenses set up by appellants was that; by filing a claim with the assignee, appellee is estopped by an election of remedies. To constitute an election of remedies, the right to file the claim with the assignee must have been inconsistent with the right of appellee to proceed against these appellants. It is difficult to perceive upon what theory the doctrine of election of remedies is applicable to this case. It is true that the assignment was made by McDuffie, as the sole owner of the bank. He may have been the sole owner; but this is immaterial if these appellants are estopped by reason of their failure to give a proper notice of the dissolution of the copartnership and of their withdrawal from membership therein. We are not called upon at this time to determine whether the liability of appellants, if any, rests solely upon estoppel. That question is not before us. The filing of a claim with the assignee for the amount due from the bank is in no manner inconsistent with the claim now asserted against appellants. The assignee holds the assets of the insolvent bank for the benefit of its creditors. Appellee is one of its creditors, and entitled to participate, either as a general or preferred creditor, in the assets in the hands of the assignee. The liability of these appellants grows out of their relationship to the insolvent bank. They were members of the copartnership when the treasurer opened an account therewith. Appellee's remedy against the bank and these appellants is concurrent, and in no sense inconsistent. It is of no significance that McDuffie, in his deed of assignment or otherwise, declared himself to be the sole owner of the bank, or that appellee may have so regarded him, in filing its claim. The claim is, in any event,

5. COUNTIES: fiscal management: lost deposits: estoppel.

based upon the relations existing between appellee and the bank. The defense of election of remedies is not applicable, and appellee is not estopped thereby.

What we have said disposes of all of the questions raised upon both appeals. Other matters are argued to some extent, which do not call for consideration at this time. We have not deemed it necessary to review any of the authorities cited by counsel upon either side. The propositions involved are largely elementary, and, to some extent at least, inhere in the merits and are raised by the general denial. The allegations of the petition as to delivery of the bond are challenged. The burden is, of course, upon appellee to prove every fact essential to establish the liability of each and all of the appellants. We have carefully limited our discussion to the exact questions before us, so as to prevent, if possible, any embarrassment to court or counsel upon the trial of the issues upon their merits.

For the error pointed out above, the judgment of the court below must be and is reversed upon both appeals.—*Reversed on appeal of bondsmen; affirmed on appeal of Haag and Anderson.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.