St. Louis, Iron Mountain & Southern Railway Company *v.* Ingram.

Opinion delivered May 10, 1915.

1. Actions—right to dismiss—vacation.—Kirby's Digest, § 6168, provides that a plaintiff may dismiss his action in vacation, in the office of the clerk, on payment of accrued costs; *held*, the plaintiff having an absolute right to dismiss his case at any time before final submission to the court or jury trying the same, that the word "vacation" as used in the statute, means any time when the court is not in session.

2. Master and servant—employer's liability act—constitutional law.—The Employer's Liability Act, Act March 8, 1911, p. 55, fixing liability of railroads for injuries to their employees, and abolishing the defenses of assumed risk, fellow servant rule, and

contributory negligence, does not deprive the railroad of the equal protection of the law, as guaranteed by amendment 14 to the Federal Constitution.

3. Master and servant—employer's liability act—injury to employee.—The first part of § 1, Act 1911, p. 55, known as the Employer's Liability Act, providing that railroads shall be liable for all damage to any person employed by such carrier for injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, does not apply to all employees of the company, but only to those engaged in the operation of the road.    .

4. Master and servant—injury to servant—operation of train.—A servant of a railroad company's bridge crew, unloading piling, *held*, under Acts 1911, p. 55 to be engaged in the operation of the train, the statute not being limited to those actually engaged in running the train; the statute includes every employee who, when injured, was performing some work in the line of his duty directly connected with and incident to the use and operation of a railroad.

5. Evidence—nonresident witness—testimony at former trial.—The testimony of a witness taken at a former trial, which was dismissed before verdict by plaintiff, is not admissible at the second trial, when the witness resides in a neighboring State and his whereabouts are well known to the party desiring to introduce his testimony.

6. Trial—request for peremptory and other instructions—taking case from the jury.—A party does not waive his right to go to the jury, when, after his request for a peremptory instruction is refused, he asks other instructions on the merits of the case.

7. Trial—peremptory instruction—rule.—The validity of a peremptory instruction depends upon whether or not reasonable minds might reach different conclusions from the evidence. It is error to take from the jury questions of fact where reasonable minds might come to different conclusions therefrom.

8. Master and servant—injury to servant—employer's liability act—presumption of negligence—question for jury.—In an action for damages, under Act 1911, p. 55, for injuries to the servant of a railroad company; *held*, although a presumption of negligence is raised against the defendant, nevertheless the defendant is entitled to have that issue submitted to the jury.

Appeal from Independence Circuit Court; *R. E. Jeffery*, Judge; reversed.

## STATEMENT BY THE COURT.

William Ingram sued the St. Louis, Iron Mountain & Southern Railway Company to recover damages for personal injuries sustained by him while helping to load some bridge timbers on a flat car. The facts are as follows:

In February, 1914, E. T. Ross, a bridge foreman of the defendant company, with the plaintiff and others of his bridge crew, were engaged in removing some old guard rails from two bridges or trestles on defendant's line of road. The guard rails were made of 6x8 pine timbers, nine feet long, and were "dapped," that is, notched so that they fit down over the ties about two inches. When they were taken up the notched edges were trimmed down smooth so that the guard rails then were pieces of timber 4x8. There was a flat car standing on the side track near the trestle and the foreman directed his crew to take a push car and go down the side track about a quarter of a mile where some bridge piling lay and load the timber on the flat car. He directed them to use these guard rails as skids or running boards. The bridge crew loaded the push car with the piling and pushed the car down the track to where the flat car was placed. The members of the crew then took the guard rails and placed them between the push car and the flat car and rolled the piling over the skids from the push car into the flat car. The first load was unloaded safely. When the second load was brought up on the push car the plaintiff was standing at the north end of the car. Some of the other members of the crew picked up two guard rails to be used as skids. While the second piece of piling was being rolled along the skids the south skid broke. The north skid then slipped off the push car and the piling fell, striking the plaintiff on the leg and breaking it. The foreman of the bridge crew said that he looked at the guard rails before the bridge crew used them for skids and that he did not discover any defects in them.

A civil engineer, on behalf of the plaintiff, testified that pieces of piling of the dimensions stated by plain-

tiff's witnesses which caused the guard rail to break would weigh something over five hundred pounds and that sound pieces of pine of the dimensions of the guard rails would be able to sustain a weight several times that of the piling.

Other facts will be stated in the opinion.

The court directed a verdict for the plaintiff and the defendant has appealed.

*E. B. Kinsworthy, McCaleb & Reeder* and *Troy Pace,* for appellant.

1. No actionable negligence was established. The skids were simple appliances not embraced within the provisions of "Employer's Liability Act." The only duty resting on defendant was to exercise ordinary care in furnishing reasonably safe tools. 101 Ark. 119; 100 *Id.* 476; 17 S. W. 580; 72 *Id.* 712; 55 Ark. 483; 108 *Id.* 383-4; Elliott on Railroads (2 ed.) § 1374; Labatt on Master & Servant, § 1671, foot note 1; 128 Ala. 434; 101 U. S. 22, 30; 143 *Id.* 452.

2. There is no competent evidence that the skid was defective. No presumption arises from the fact that the skid did break. 51 Ark. 467; 89 *Id.* 50; 90 *Id.* 326. The so-called expert evidence was inadmissible. 87 Ark. 242; *Id.* 257; 50 *Id.* 520; 108 *Id.* 392.

3. Plaintiff assumed the risk. 82 Ark. 534; 73 *Id.* 55; 93 *Id.* 153; 107 *Id.* 341; 95 *Id.* 562; 56 *Id.* 206; 90 *Id.* 407; 82 *Id.* 11; 172 S. W. 493; 100 Ark. 462; 82 *Id.* 17.

4. The action should have been abated because of the suit pending. 27 Ark. 315; 88 *Id.* 160. There was no vacation of the court. 104 Ark. 629; 72 S. W. 494; 79 *Id.* 494.

5. It was error to refuse to admit the evidence of Dr. Campbell. 95 Ark. 176; 47 *Id.* 180; 60 *Id.* 400; 58 *Id.* 353; 42 *Id.* 288; 60 *Id.* 556; 98 *Id.* 357; 106 *Id.* 101; 90 *Id.* 278.

6. In order to justify the assessment of damages for future or permanent disability it must appear that a continued or permanent disability is reasonably certain to result. 13 Cyc. 144; 90 S. W. 115; 90 Ark. 278,

284. No recovery can be had for "probable" future suffering or permanent injury. 97 Ark. 358, 365; 106 *Id.* 186.

7. It was error to give the peremptory instruction for plaintiff. Questions of negligence and assumptions of risk are ordinarily for the jury. Defendant also asked a peremptory instruction accompanied with ten other requests. If the peremptory instruction was refused the other prayers should have been granted. 89 Ark. 534; 90 *Id.* 23; 16 L. R. A. 189; 107 Ark. 158; 114 Ark. 376; 111 Ark. 309; 78 *Id.* 234; 168 S. W. 135.

8. Defendant was not required to seach for latent or hidden defects. 79 Ark. 440; White Pers. Inj. on R. R., § 374; Elliott on R. R. (2 Ed.), § 1348.

*Dene H. Coleman* and *Jones & Campbell,* for appellee.

1. The question of assumed risk does not enter into this case. (1) There is no evidence that plaintiff knew of the danger. (2) Under the Act (No. 88, 1911), the defense of assumed risk has been abolished. 87 Ark. 396; 77 *Id.* 458; 97 *Id.* 364; 95 Id. 295; *K. C. Ry. Co.* v. *Huff,* ms. op. Jan. 25, 1915.

2. The skid was not a simple tool within the meaning of the act. 127 Wisc. 318; 82 Ark. 372; 92 N. W. 535; 54 Atl. 996; 57 *Id.* 85; 108 N. W. 1016; 58 *Id.* 878. If it was, it was the master's duty to furnish a reasonably safe kind. Labatt on M. & S. (2 Ed.), p. 2479; 47 Am. R. 286; 127 S. W. 1153; 169 S. W. 940; 70 Fed. 669; 54 So. 252. The rule is never required where there is not equal opportunity of inspection. (70 S. E. 742; 88 Ark. 36; 14 Oh. C. C. 377; 49 N. E. 854); nor where the servant does not have the manual control of the tool. Labatt on M. & S. (2 Ed.), p. 2483; 84 N. E. 730; 60 S. W. 319; 107 Ark. 524; 88 *Id.* 36.

3. The peremptory instruction for plaintiff was correct. 15 Ark. 624; 3 Labatt, M. & S. (2 Ed.), p. 2810. A request for a directed verdict by both sides, unaccompanied by other instructions, submits questions of fact to the court. 114 Ark. 376; 100 Ark. 71; 105 *Id.* 25. Proof

of a defect makes a *prima facie* case under the Act of 1911. The act is constitutional. 233 U. S. 324; 234 *Id.* 280.

4. There was no error in the admission or exclusion of expert testimony. 42 Ark. L. Rep. 101. Nor in excluding Dr. Campbell's testimony. 16 Cyc. 1088-1095, 1097-8; 90 Ark. 514. No prejudice resulted. 89 Ark. 483; 96 *Id.* 627; 85 *Id.* 376; 82 *Id.* 105; 80 *Id.* 376.

5. The former suit was properly dismissed. The court was in "vacation." Kirby's Dig., § 6168; 46 Ark. 229; 48 *Id.* 227; 63 *Id.* 1; 32 *Id.* 278; 82 *Id.* 193; Kirby's Dig., § § 1320, 1531.

Hart, J., (after stating the facts). It is insisted by counsel for the defendant that the action should have been abated because there was another suit pending to recover damages for the same injury in the Jackson Circuit Court. The facts upon which this assignment of error is based are as follows:

The plaintiff first instituted an action in the Jackson Circuit Court to recover damages for the injury which is the foundation of the present action. The trial of the case was begun on September 23, 1914, and after a portion of plaintiff's testimony had been introduced, by agreement of the parties the case was withdrawn from the jury and continued for the term. On the 3d day of October, 1914, the court adjourned until the 14th day of November, 1914, and on the 7th day of October, 1912, the plaintiff paid to the clerk of the Jackson Circuit Court the cost which had accrued in the action and the clerk entered of record a dismissal of the cause on motion of the plaintiff.

Section 6168 of Kirby's Digest, provides that the plaintiff may dismiss any action in vacation in the office of the clerk on the payment of all costs that may have accrued therein. It is insisted by counsel for the defendant that the word "vacation" has a technical meaning and means that period of time from the final adjournment of the court until its convening at the next term. We do not agree with counsel in this contention.

Under section 6167 of the Digest the plaintiff may move the court to dismiss before final submission of the case to the jury.

Where the case is dismissed in vacation in the office of the clerk it is proper for the clerk to enter an order of dismissal at the request of the plaintiff. *Lyons* v. *Green,* 68 Ark. 205.

Under section 6167 of Kirby's Digest the action may be dismissed without prejudice by the plaintiff as a matter of right at any time before final submission of the cause; and after the cause has been submitted, in the interest of justice, the court may permit the plaintiff to withdraw the submission of his case and to take a nonsuit without prejudice. *St. Louis Southwestern Ry. Co.* v. *White Sewing Machine Co.,* 69 Ark. 431.

(1) The plaintiff having an absolute right to dismiss his case at any time before final submission to the court or jury trying the case, we think it is evident that the word "vacation" means any time when the court is not in session.

This suit was instituted under the Employers' Liability Act of March 8, 1911. See Acts of 1911, page 55. The first three sections of the act are as follows:

"Section 1. That every common carrier by railroad in this State, shall be liable for all damages to any person suffering injury while he is employed by such carrier, or, in case of the death of such employee, to his or her personal or legal representative, for the benefit of the surviving widow or husband and children of such employee; if none, then to such employee's parents; if none, then to the next of kin of such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any insufficiency of clearance of obstructions, of strength of roadbed and tracks or structures, or machinery and equipment, of lights and signals in switching and terminal yards, or rules and regulations and of number of employees to perform the particular duties with safety to themselves and their co-

employees, or of any other insufficiency; or by reason of any defect, which defect is due to its negligence in its cars, engines, motors, appliances, machinery, track, roadbed, boats, works, wharves or other equipment.

"Sec. 2.   If the employee of any such common carrier shall receive any injury or shall be killed by reason of any defect in any car or cars, engines, motors, appliances, machinery, track, roadbed, works, wharves, or other equipment owned, operated or used by such common carrier, such common carrier shall be deemed to have had knowledge of such defect before and at the time such injury is sustained or death caused, and when the fact of such defect shall be made to appear in the trial of any action in the courts of this State brought by such employee or his or her personal or legal representative against any such common carrier for damages on account of such injuries so received or death so caused, the same shall be *prima facie* evidence of negligence on the part of such common carrier.

"Sec. 3.   In all rights of action hereafter arising within or by virtue of this act or any provision of the same for personal injury to an employee, or where such an injury has resulted in his death, the fact that an employee may have been guilty of contributory negligence shall not bar a recovery; provided, that the negligence of such employee was of a lesser degree than the negligence of such common carrier, its officers, agents or employees; provided, further, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation of such common carrier, its officials, agents or employees, of any law enacted for the safety of employees or persons contributed to the injury or death of such employee, and such employee shall not be held to have assumed the risk of his employment in any action arising out of any of the provisions of this act."

(2)   It is first insisted by counsel for defendant that the statute is violative of section 1 of the Fourteenth Amendment to the Constitution of the United States in that it denies to the defendant the equal protection of

the law, but we do not agree with them in that contention.

The Supreme Courts of Indiana and other States have sustained the constitutionality of somewhat similar acts by construing them as designed exclusively for the benefit of those who are, in the course of their employment, exposed to particular dangers incident to the use and operation of railroad engines and trains and whose injuries are caused thereby. See, *Indianapolis Traction & Terminal Co.* v. *Kinney,* 171 Ind. 612, 85 N. E. 954, and 23 L. R. A. (N. S.) 711.

In the case of *Louisville & Nashville Rd. Co.* v. *Melton,* 218 U. S. 36, also reported in 47 L. R. A. (N. S.) 84, the court held that the modification of the fellow servant rule as to railway employees, made by the Indiana Act of 1893, did not offend against the equal protection of the law clause of the Federal Constitution because construed as applying to all employees doing work essential to enable the carrying on of railway operations, and not as limited to those engaged in or about the movement of trains, and that such general classification of railway employees was a proper exercise of the police power.

Other decisions sustaining this view are cited in the case note.

The views expressed by the United States Supreme Court are in accord with the trend of our own decisions. See *Ozan Lumber Co.* v. *Biddie,* 87 Ark. 587; *Aluminum Co.* v. *Ramsey,* 89 Ark. 522; *Soard* v. *Western Anthracite Coal and Mining Co.,* 92 Ark. 502.

(3)   It will be observed that section 1 of the act has two branches. The first part provides that every common carrier by railroad in this State shall be liable for all damages to any person employed by such carrier for injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier.

The courts of North Carolina and some other States, under statutes somewhat similar, have held that the language is broad enough to include injuries sustained by

any employee in the course of his employment. See *Mott* v. *Southern Ry. Co.*, 42 S. E. 601, and case note to 47 L. R. A. (N. S.) p. 84. To give the statute this broad and comprehensive construction would eliminate and render meaningless all the remaining portion of the section.

In the case of *Kansas City & Memphis Ry. Co.* v. *Huff*, 116 Ark. 461, 173 S. W. 419, we have already held that the first part of section 1, referred to above, does not refer to every servant of a railroad company injured in any department while in the course of his employment, but that the language was copied from statutes in other States where it was used to abolish the common law rule in regard to fellow servants. In that case we said:

"The legislation was first enacted in jurisdictions where the common law rule in reference to fellow servants was in force; and in the case of *Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492, 58 L. Ed. 1062, the court construed the phrase 'resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.' This quotation appears in the Federal Employer's Liability Act and it will be observed that our act copies that phrase. Interpreting the section of the Federal Statute in which the above phrase appears, the Supreme Court of the United States in the above cited case said:

" 'This clause has two branches: The one covering the negligence of any of the officers, agents or employees of the carrier, which has the effect of abolishing in this class of cases the common law rule that exempted the employer from responsibility for the negligence of a fellow employee of the plaintiff * * *.'

"There was the same necessity in some other jurisdictions for language of this character to abolish the common law rule in regard to fellow servants. It is true there was no such necessity in this State as the common law rule on this subject had been changed by previous legislation. While there was no necessity, under the law of this State, for this phrase to change the common law rule in regard to fellow servants, yet the

language above quoted creates a right of action under this Act No. 88, where the servant's injury was caused by the negligence of a fellow servant.''

It will be observed that the latter part of section 1 uses the language, ''which defect is due to its negligence in its cars, engines, motors, appliances, machinery, track, roadbed, boats, works, wharves and other equipment.'' When this language is carefully read, we are of the opinion that the logical rule to be adopted is that the statute applies to those employees who are connected with the use and operation of the road. The word ''appliances'' as used in the statute extends to all those instrumentalities which are supplied and furnished to the servant by the master for the servant's use in the operation of the road.

(4)   This brings us to the question whether loading the car under the circumstances in this case is connected with the operation of the railroad within the meaning of the statute. The authorities on this question are in direct conflict and a great many of them are collected in the case note to *Johnson* v. *Great Northern Railway Co.,* 18 L. R. A. (N. S.), at page 480-1.

After a careful consideration of the whole statute we do not think the Legislature intended to restrict its terms to those actually engaged in running trains. The statute refers to motors, boats, works, wharves and other equipment and contemplates that the railroad company might have wharves and boats and unload freight from them on the cars, or *vice versa.* We think the statute is broad enough to include something more than the mere running of locomotives and trains of the railroad company. It includes every employee who, when injured, was performing some work in the line of his duty directly connected with and incident to the use and operation of a railroad. The loading and unloading of cars is intimately associated with and directly connected with the operation of a railroad. Plaintiff at the time he was injured was doing a part of the work necessarily connected with the operation of defendant's trains. He was helping to load a car with piling to be transported to an-

other part of defendant's line of road and this work was inseparably connected with the operation of the defendant's line of road, and brings this case within the spirit of the statute. See, *Chicago, Kansas & Western Rd. Co. v. Pontius,* 157 U. S. 209; *Daley* v. *Boston & A. R. Co.* (Mass.) 16 N. E. 690; *St. L. S. W. Ry. Co. of Texas* v. *Thornton,* Tex. Civ. Ct. Appls., 103 S. W. 437; *Orendorff v. Terminal R. Association of St. Louis,* St. Louis Ct. of Appeals, 92 S. W. 148. Other cases supporting this conclusion will be found in the case note last above referred to.

(5)    It is also insisted by counsel for the defendant that the court erred in refusing to admit the testimony of Dr. Campbell, taken while the trial was in progress in the Jackson Circuit Court. We do not think the court erred in this respect. It is true that he was a nonresident of the State but the defendants might have taken his deposition. Not having done so they are in no attitude to complain of the action of the court in refusing to permit them to introduce his testimony taken at the trial at Newport, for his place of residence at Memphis was well known to defendant's attorneys. Greenleaf on Evidence, vol. 1, sec. 163; see, also, *Wimberly* v. *State,* 90 Ark. 514.

(6-7)    The record shows that at the conclusion of the testimony, the defendant asked the court for a peremptory instruction. This request was refused by the court. Thereupon the defendant asked the court to give other instructions, which were not peremptory in their nature, all of which were refused by the court. At the request of the plaintiff and over the objection of the defendant, the court directed the jury to find for the plaintiff and submitted to the jury only the question of the amount of damages to which plaintiff was entitled. It is urged by counsel for the plaintiff that this state of record brings the case within the doctrine of *St. Louis Southwestern Ry. Co.* v. *Mulkey,* 100 Ark. 71; but we can not agree with them in that contention. The effect of our decision in the *Mulkey* case is that where both parties request a

peremptory instruction and do nothing more, they thereby assume the facts to be undisputed, and submit to the trial judge the determination of the inferences proper to be drawn from them. The decision in that case does not go to the extent of holding that a party may not request a peremptory instruction, and upon the refusal of the court to give it, insist, by appropriate requests, upon the submission of the case to the jury, where the evidence is conflicting or reasonable minds might draw different conclusions from it. To so hold would unduly extend the rule of the *Mulkey* case. The distinction between a case like the case before us and that which was before us in the *Mulkey* case was pointed out in *Gee* v. *Hatley,* 114 Ark. 376. After the defendant's request for a peremptory instruction was denied by the court, its counsel asked for other instructions not peremptory in their nature. We are of the opinion that the defendant did not waive its right to go to the jury in view of the fact that it asked other instructions when its request for a peremptory instruction was refused. It follows that the validity of the peremptory instruction depends upon whether or not reasonable minds might reach different conclusions from the evidence. See *Minnesota & Dakota Cattle Co.* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 210 U. S. 1, 15 Am. & Eng. Ann. Cas. 70. Under the facts and circumstances introduced in evidence, we are of the opinion that the court erred in taking away from the jury the question of the primary negligence of the defendant. It is always error to take away from the consideration of the jury questions of fact where reasonable minds might come to different conclusions therefrom.

It is true that section 2 of the act under which this action was brought provides that the railroad company shall be deemed to have had knowledge of the defect in its appliances and that when the fact of such defect shall be made to appear in the trial of any action in the courts of this State brought by an employee, the same shall be

*prima facie* evidence of negligence on the part of such common carrier.

It was conceded by the defendant that the plaintiff was free of contributory negligence and the act by its terms took away from the defendant the plea of assumed risk.   But, as already stated, we think the question of the primary negligence of the defendant was one of fact for the jury.

The plaintiff introduced a civil engineer who stated that he could tell the weight of the piling which was being rolled over the skids at the time plaintiff was injured if the dimensions thereof were given him, and stated that from the dimensions testified to by the plaintiff's witnesses the piling in question would weigh a little more than 500 pounds; and that a sound piece of pine timber, four by eight inches and nine feet long, would be capable of holding up several times that weight.

On the other hand the foreman testified that he observed the guard rails after they were taken from the bridges and that there were no defects in them.

The number of guard rails lying around there were variously estimated from three or four to about twelve. The particular guard rails which were used as skids were selected by some of the employees each time they began to unload the push car.   At the time plaintiff was injured he saw some of the other servants pick up the guard rails and place them on the push car and flat car to be used as skids, but says that he did not pay any particular attention to them.

(8)   The jury were the sole and exclusive judges of the weight of the testimony and the credibility of the witnesses.   They had a right to believe all or part of the testimony of each witness.   It was their duty to accept that which they believed to be true and to reject that which they believed to be false, and in the exercise of this right they might have found the question of negligence either for or against the defendant.

It follows, therefore, that the judgment must be reversed and the cause remanded for a new trial.