INTERSTATE BUSINESS MEN'S ACCIDENT ASSOCIATION *v.* SANDERSON.

Opinion delivered May 31, 1920.

1. INSURANCE—LOSS OF TIME BY DISEASE.—In an action on a health policy applying "only in the event that the disease shall compel the insured to refrain from performing every act of business and be under the constant treatment of a regular physician," evidence *held* to sustain a finding of liability.

2. INSURANCE—CONFINEMENT TO HOUSE.—Where a health policy provided benefits only if the insured should by disease be compelled "to remain continuously and strictly within the house" and "be under the constant treatment of a regular physician," the fact that insured went out for a short time each day, under directions of his physician, for the purpose of getting sunshine and fresh air will not preclude recovery, though he could not recover if the disease was one which required him to remain outside the house rather than within it.

3. INSURANCE—CONFINEMENT TO HOUSE—QUESTION FOR JURY.—In an action on a health policy, where the insured claimed the benefit to be allowed in case of strict confinement in the house, the question whether he was so confined, though he made short daily trips for water and sunshine, *held* for the jury.

4. TRIAL—EFFECT OF REQUEST FOR PEREMPTORY INSTRUCTION.—Though both sides asked for a peremptory instruction, appellant did not waive its right to insist on a submission of the issues to the jury where it asked another instruction submitting the issues.

5. EVIDENCE—WEIGHT AND SUFFICIENCY OF PARTY'S TESTIMONY.—Where the only testimony upon a certain issue was that of the plaintiff himself, he being an interested witness, the jury was not bound to accept his testimony as true.

6. EVIDENCE—WEIGHT AND SUFFICIENCY OF PARTY'S TESTIMONY.—Even though plaintiff's testimony upon a certain issue should be accepted as true, if different inferences might have been drawn from it as to defendant's liability, the case should be submitted to the jury.

Appeal from Miller Circuit Court; *Geo. R. Haynie,* Judge; reversed.

*Arnold & Arnold,* for appellant.

According to the undisputed evidence, there can be no recovery under the first clause of the policy, because appellee's disease was not sufficient to compel him to remain strictly and continuously within the house. He was not continuously confined to his house by the disease within the meaning of the policy. The court erred in withdrawing the case from the jury. 99 Me. 390; 59 Atl. 535; 135 Mich. 439; 97 N. W. 966; 104 N. W. 734; 47 Pa. Sup. Ct. 176; 110 N. E. 972; 141 Mich. 482; 23 L. R. A. (N. S.) 359 and notes; 42 *Id.* 700 and note. The case here was not withdrawn from the jury. 92 Ark.

378; 100 *Id.* 71. The insured was not entitled to recover the penalty. 92 Ark. 378.

*M. E. Sanderson,* for appellee.

There is no conflict in the testimony and no case for a jury. The court correctly interpreted the contract, and there is no error in the instructions. 113 Ark. 197; 117 *Id.* 145; 111 *Id.* 607.

McCulloch, C. J. This is an action on a policy of insurance issued by appellant to appellee, insuring appellee "against loss of time by disease not due to accidental injury." The two clauses of the policy on which the action is founded read as follows:

"LOSS BY DISEASE.

"Section III.

"HOUSE CONFINEMENT $50.00 first week and 29 succeeding weeks.

"The insurance provided, shall cover only in the event that the disease shall compel the insured to remain continuously and strictly within the house for a period of or exceeding two full weeks and be under the constant treatment of a regular physician.

"NONCONFINEMENT $15.00 first week and $20.00 for eight weeks.

"The insurance provided shall cover only in the event the disease shall compel the insured to refrain from performing every act of business and be under the constant treatment of a regular physician."

Liability is asserted for the maximum amount ($175) allowed under the second clause, and for twenty-five weeks, or $1,250 under the first clause. Appellant conceded liability for the amount sought to be recovered under the second clause and tendered the amount to appellee. On the trial of the issues before a jury the court gave a peremptory instruction in appellee's favor. The question now before us on this appeal is whether or not the testimony presented an issue which should have been submitted to the jury.

The case was tried on the testimony of appellee himself and Doctor Phillips, who was appellee's physician. Appellant introduced no testimony at all. Appellee resided at Ashdown at the time he was stricken with the disease which caused the loss of time involved in this inquiry, and was engaged in farming and in the retail lumber business. He was manager of a lumber yard and looked after the office work, as well as the outside business. He became ill in the early part of the year 1918 while the policy was in force, and on consulting Doctor Phillips it was found that he was suffering with nephritis. On March 13, 1918, the physician pronounced appellee's condition of health to be very serious, and thereafter appellant gave but little attention to business, and his condition of health continued to grow worse. The testimony tended to show that he was entirely unable to give attention to business, and that he merely went down to his place of business, from time to time, to attend to business to a very limited extent. The evidence was sufficient, we think, to justify the finding that appellee's disease was sufficient to cause him to "refrain from performing every act of business and be under the constant treatment of a regular physician," within the meaning of the second clause of the policy. However, appellant concedes liability on this branch of the case, and it is unnecessary to discuss the evidence at length so far as it tends to establish liability under that clause.

On July 5, 1918, Doctor Phillips, who had been attending appellee regularly up to that time, advised him that his condition had become so serious that he should give up all matters of business and pleasure and go to Marlin Wells, Texas, to receive the benefit of the water and climate of that place. The physician also advised appellee that the fresh air and sunshine of that climate together with the water, would do more to build him up than anything else. At that time appellee had become very much weakened from the disease and was easily fatigued. To use the exact language of the physician, his testimony was that "the fresh air and sunshine to

this patient were more beneficial than remaining in the house, and tended to arrest the disease from which he was suffering." Pursuant to the physician's advice, appellee sold out his business and moved to Marlin, Texas, where he remained for a considerable time for the purpose of getting the benefit of the mineral water and the climate at that place. He was under the treatment of another physician while he was there, but his course of conduct and the progress of the disease is disclosed entirely by appellee's own testimony, as he did not introduce any other witness as to his stay at Marlin Wells.

Appellee stated in his testimony that he was confined to the house during his stay there, except that he made a daily trip to the postoffice to get his mail, and made trips a distance of four blocks to the wells to get water twice a day, and that he occasionally would stop for a short time at one of the stores along the way and make a purchase. He testified that there was a large pavilion at the well and that he would occasionally sit there for half an hour at a time, and that while at home he spent much of the time sitting out on the porch. On cross-examination of appellee it was drawn out that he had made two or three statements to appellant, and in response to the question whether or not that he had been "strictly and continuously confined within the house" he answered in the negative.

Each side asked for a peremptory instruction, and in addition to that appellant asked the court to give the following instruction:

"You are instructed that the policy sued on herein reads that plaintiff is entitled to recover only in two events:

"*First.* In the event the disease shall compel the insured to remain continuously and strictly within the house for a period of or exceeding two full weeks and be under the constant treatment of a regular physician, he is entitled to recover $50 for the first week and 29 succeeding weeks.

"*Second.* In the event the disease shall compel the insured to refrain from performing every act of business and be under the constant treatment of a regular physician, he is entitled to recover $15 for the first week and $20 per week for eight weeks, and you are instructed that the plaintiff is entitled to recover nothing herein except as provided for in said policy covering total disability, and for such time as he was only partially disabled on account of illness, he is entitled to recover nothing."

It is contended by learned counsel for appellant, in the first place, that according to the undisputed evidence there can be no recovery under the first clause of the policy for the reason that appellee's disease was not sufficient to compel him "to remain strictly and continuously within the house" within the meaning of the terms of the policy. It is argued that according to appellee's own testimony he was not continuously confined to his house by the disease, but that he left the house each day for the purpose of making trips to the well and certain other purposes. On the other hand, it is contended by appellee that according to the undisputed evidence he was confined to the house continuously within the meaning of the policy, and that the court was correct in giving a peremptory instruction. We are of the opinion that this branch of the case is ruled by the law as declared by this court in the case of *Great Eastern Casualty Co.* v. *Robins,* 111 Ark. 607, where we held, quoting from the syllabus, that "the term continuous confinement, within the meaning of an indemnity insurance policy, insuring plaintiff against sickness, does not mean that plaintiff must have been confined within the house every minute or hour, and the fact that he went out occasionally for the purpose of taking exercise and fresh air under the instructions of his physician is not sufficient to prevent plaintiff from recovering in an action on the policy."

The court in that case had given an instruction in line with the law as declared above, and we approved that instruction, notwithstanding the fact that there was undisputed evidence to the effect that the insured, though

confined to the house by disease, went out for a short time each day under the directions of his physician for the purpose of getting sunshine and fresh air. The language of the policy in that case was substantially the same as the language of the policy now before us, except the word "strictly" is used in this policy, but was not used in the policy in the other case. We do not think that the use of that word changes the effect of this clause of the policy. If the language of the policy in the other case was not to be literally construed so as to take the case without its operation because the insured had in fact been outside the walls of the house, we do not think the use of the word "strictly" in the policy now before us would call for a more literal application of the language used. It would be a very unreasonable construction to put on the policy and would practically nullify the benefits paid for under the policy to say that because a man was out of the house one time he was not insured against loss. If necessary daily trips to get water and for sunshine under the advice of a physician excluded the insured from the benefits under the policy, then it would follow that a single excursion from the house under any circumstances would have the same effect. The language should have reasonable interpretation to give the policy some effect rather than to nullify it.

On the other hand, it does not follow that, if it is necessary for the insured to remain out of the house for the purpose of getting fresh air, he can claim the benefits of the policy, because the insurer had the right to state the terms upon which its obligation was incurred, and they saw fit, in this instance, to insure only against such diseases as continuously confined to the house. If the disease required the insured to remain outside of the house, rather than to remain in the house, it does not come within the terms of the policy. But short trips away from the house for purposes necessary to bring beneficial results to the health of the insured does not take the case out of the operation of the language of the policy which requires confinement to the house. Our conclusion is

therefore that the testimony presented a question of fact for the determination of the jury as to whether or not appellee's disease and his state of health at the time required continuous confinement to the house, within the meaning of the policy, notwithstanding his short trips out for water and sunshine, and this issue should have been submitted to the jury. Both sides asked for a peremptory instruction, but appellant did not waive its right to insist on a submission of the issues to the jury, as it asked another instruction submitting the issues. *St. L. S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 67; *Sims* v. *Everett,* 113 Ark. 198; *Supreme Tribe of Ben Hur* v. *Gailey,* 117 Ark. 145; *St. L., I. M. & S. Ry. Co.* v. *Ingram,* 118 Ark. 377.

It is said by counsel for appellee that the additional instruction asked by appellant was not correct, and that therefore the case stood as if appellant had only asked for the peremptory instruction so as to bring it in the operation of the rule in *Mulkey* v. *Railway, supra.* Instruction No. 2 requested by appellant was a substantial copy of the two clauses of the policy, which were self-explanatory. The effect of the instruction, if given, would have been to submit to the jury the question of fact as to whether or not appellant's contention fell within the clause of the policy.

It can not be said that the testimony was undisputed, for there was no other testimony, except that of appellee himself, adduced in support of his right of action under the first clause of the policy, and appellee being an interested witness, the jury was not bound to accept his testimony. *Skillern* v. *Baker,* 82 Ark. 86; *Lilly* v. *Robinson Merc. Co.,* 106 Ark. 571; *Harris* v. *Bush,* 126 Ark. 369. Besides, under appellee's own testimony, it was a question for the jury to determine whether or not the disease was sufficient to compel his continuous confinement to the house. If the jury accepted his testimony as true, different inferences might have been drawn from it with respect to the effect of the

disease in confining him to the house, except as to necessary trips for the benefit of the water and sunshine.

For the error of the court in withdrawing the case from the jury by a peremptory instruction, the judgment will be reversed and the cause remanded for a new trial.