MASSACHUSETTS PROTECTIVE ASSOCIATION *v.* ODEN.

4-2816

Opinion delivered January 23, 1933.

*Frank L. Harrington* and *Cravens & Cravens,* for appellant.

*Hill, Fitzhugh & Brizzolara,* for appellee.

McHANEY, J. In June, 1922, appellant issued to appellee its policy of accident and health insurance, by which · it agreed to pay him $50 per week for total disability caused by sickness for a total period of 60 weeks. The application for the policy was taken in Fort Smith and forwarded to appellant at its home office in Massachusetts, where the policy was promptly issued. The application provided for a quarterly premium of $43.25 until he was fifty years of age, and thereafter a quarterly premium of $45. This application was changed at the home office to show a quarterly premium up to fifty years of age of $46.25 and thereafter of $53.75, and the policy as issued contained or called for these amended amounts as quarterly premiums, and attached to the policy was a letter calling appellee's attention to such changes. The policy, with letter attached was forwarded by appellant to its agent in Fort Smith for delivery to appellee. It was accepted by him, and the premium was paid according to such changed amounts, and has been continuously paid since that time. Also attached to the policy is what is called a "continuous disability rider," which reads as follows: "If total disability resulting from disease and arising thereunder prior to the insured's sixtieth birthday continued beyond the sixty weeks described in clause 1 of the attached policy, the weekly indemnity provided for by clause A of said policy shall continue to be payable to the insured so long as he thereafter lives and is continuously totally disabled and necessarily confined within the house under the care of licensed physician. In all other respects the terms, provisions and conditions of said policy remain the same."

More than sixty weeks prior to August 1, 1931, appellee became totally disabled, being afflicted with heart trouble, known as myocarditis, for which appellant paid

to him $50 per week for sixty weeks, which expired August 1, 1931, and thereafter it refused to pay under said "continuous disability rider," although demanded so to do, because it claims appellee was not "necessarily confined within the house," as provided in or within the meaning of said rider. Suit was thereafter brought to collect the accumulated benefits which had accrued under said policy, which resulted in a verdict and judgment in appellee's favor with penalty and attorney's fees.

For a reversal, appellant first insists that the evidence is insufficient to entitle appellee to recover. It admits that he is totally disabled, was so during the sixty weeks for which it paid up to August 1, 1931, and still is. But it says, in order for him to be entitled to recover under said rider for continuous disability, he must not only be totally disabled, but must be confined within the house as a necessary result of his sickness. In other words, it is contended that he was not "necessarily confined within the house." This contention is based on the fact that appellee, under the advice of his physicians, took frequent short automobile rides, in favorable weather, for fresh air and sunshine; that he also, under the same advice, took a train trip to the seashore at Corpus Christi, Texas, for a change of climate and for the salt air; and that he made an automobile trip to Monticello, Arkansas, to spend Thanksgiving with relatives and friends. This evidence, of course, shows that he was not confined within the four walls of his house for every minute of the day. But does it show such a break in confinement as to preclude a recovery as a matter of law? We do not think so, and we think the case is ruled on this point by the previous decisions of this court in *Great Eastern Casualty Co.* v. *Robins,* 111 Ark. 607, 164 S. W. 750, and *Interstate Business Men's Accident Association* v. *Sanderson,* 144 Ark. 271, 222 S. W. 51. In the former case the clause under consideration was, "and shall necessarily and continuously confine him within the house"; while in the latter it was, "that the disease shall compel the insured to remain continuously and strictly within the

house," etc. In the former or Robins case the trial court instructed the jury that "a continuous confinement within the meaning of this instruction does not mean that the plaintiff, in order to be entitled to this benefit, must have actually been confined within the walls of a house every minute or hour," and that "the mere fact that he went out occasionally and at stated intervals for the purpose of taking exercise and fresh air, under the instructions of his physician, would not be sufficient to prevent plaintiff from recovering in this action." This instruction was approved by this court. A number of cases from other courts are cited to the same effect. In the course of its opinion, the court said: "The contract is couched in the language of the insurer, and it would be following too much the letter of it to say that temporary excursions from the house upon the advice of a physician for the purpose of treatment, take the case outside of the terms of the policy. That would be a very strained construction of the language of the policy, and would defeat its very purpose." In the Sanderson case, *supra,* the court held that it was ruled by the Robins case and followed it on the construction of the language quoted. The case now under consideration is not distinguishable from those. The facts are quite similar, and the law is the same. Of course, as said in the Sanderson case, and as the court instructed the jury in this case, if the disease is such as to require the insured to remain out of the house, he could not recover, as the insurer has the right to dictate the terms upon which its risk is assumed. "But," as said in the Sanderson case, "short trips away from the house for purposes necessary to bring beneficial results to the health of the insured does not take the case out of the operation of the language of the policy which requires confinement to the house."

It is next insisted that the policy and rider constitute a Massachusetts contract, and that the courts of said State have placed a different construction on the language used than the foregoing, and hold under such circumstances there is no liability. The case of *Rocci* v. *Mass.*

*Acc. Co.,* 222 Mass. 336, 110 N. E. 972, is cited. We will not here determine what the Supreme Court of Massachusetts has decided in the premises, for we are convinced that, under the facts heretofore detailed, this is an Arkansas contract. The application was changed at the home office so as to increase the rates named therein; the policy was issued based upon the increased rates; it was sent to its local agent in Fort Smith for delivery to appellee; and it had to be accepted by him and at least the additional premium paid by him in Fort Smith before any binding contract was made. It became a completed contract upon delivery, acceptance of the policy, and payment of the premium, all of which occurred in Arkansas. Therefore it was an Arkansas contract and governed by its laws. *Scaife* v. *Bird,* 39 Ark. 568; *Cage* v. *Black,* 97 Ark. 613, 134 S. W. 942; *Garnet Carter Co.* v. *Carver,* 132 Ark. 305, 200 S. W. 984; *Connor* v. *Excess Ins. Co.,* 51 Fed. (2d) 626.

Complaint is also made of the action of the court in giving appellee's instruction No. 3 and in refusing to give appellant's requested instruction No. 4. What we have already said disposes of these assignments. No. 3 was similar to that given in the Robins case, which was there approved, and No. 4 was properly refused.

Other assignments are argued, which we have carefully considered, and find them without merit. We think it unnecessary to discuss them, and to do so would unduly extend this opinion.

We find no error. Affirmed.