FEDERAL LIFE INSURANCE COMPANY *v.* GANN.

4-5194                                          120 S. W. 2d 563.

Opinion delivered October 24, 1938.

*Carmichael & Hendricks,* for appellant.

*Chas. Mehaffy* and *Chas. Jacobson,* for appellee.

HUMPHREYS, J. This is an appeal from a judgment for $2,350, penalty, interest and attorney's fee rendered in the circuit court of Pulaski county, second division, against appellant in favor of appellee on an insurance policy issued by appellant to appellee on October 23, 1924, agreeing for an annual payment of $53 it would pay insured a monthly indemnity of $200 for loss of time from total disability so long as insured lived and continuously suffered such total loss, said payments to begin after the third month thereof, and if by reason of such sickness insured be treated in a licensed hospital, an additional 25 per cent. of such indemnity would be paid not to exceed a period of three months.

Appellee alleged in his complaint that appellant was an authorized life insurance company; that on October 23, 1924, it issued its contract, as above stated; that by reason of sickness he became totally disabled from performing the duties of his occupation and such total disability was continuous; that he was confined in a hospital for three months; that payment under the policy was refused, and there was due him the sum of $1,200 to June 22, 1937.

On June 14, 1937, appellant filed an answer denying each and every material allegation in the complaint.

On August 23, 1937, appellee amended his complaint so as to bring the total indemnity claim up to August 22, 1937, and on February 10, 1938, the day of the trial, by consent, again amended his complaint to bring the amount claimed, to December 22, 1937, making a total of $2,350, covering a period of eleven months total disability, eight months at $200 per month and three months at $250 per month.

We deem it unnecessary to set out the substance of the testimony of each witness who testified in the case.

Suffice it to say that appellee became ill on or about October 19, 1936. At that time Dr. H. W. Hundling examined him and found that he had amoebic dysentery and his diagnosis was confirmed by Drs. Rhinehart and Kilbury. Drs. Shipp and Barrier then examined him and in addition found a germ called Bargen organism that produces secondary ulcerations, an inflammation of the amoebic ulcers in his colon. Dr. Allen Cazort found a germ in the bowel and sent him to St. Vincent's hospital where the X-rays showed ulcerations extending from the head of the large bowel to the rectum, some three or four feet in length. They also found ulcerations of the stomach. Six physicians examined him. Some said he should go to Florida, others to California, but he decided to go to Mayo's to consult Dr. Bargen, where he was examined by Drs. Bargen and Kirkland. In addition to amoebic dysentery and ulcerations of the colon and stomach, he developed undulant fever. During the time he was in St. Vincent's hospital his temperature ran as high as 107° for twenty-four hours, and then 105° from which they were unable to reduce it for some time. His heart skipped and beat from 150 to 160 for forty hours. After getting out of the hospital appellee went to Florida and later to New York and from there to London and Edinburgh and was going to Vienna to consult a renowned physician, but was taken so ill he could not go on to Vienna and was ordered to return home immediately. On the trip from New York to London as well as on his return to America the ship doctor attended him practically every day. On his trip to Florida and to New York and while in London and Edinburgh he consulted specialists. On his trip abroad he was accompanied by two friends and a graduate nurse. In fact from the time he became ill he had been under the care of graduate trained nurses. His former associate, Dr. Reed, met him in New York upon his return from London on account of his serious condition and brought him home and has been in adjoining offices to him ever since where he could render him any assistance he needed and before he went abroad he was in offices ad-

joining Dr. Reed where the doctor could render him any service necessary. In fact he has been administered to by physicians and graduate nurses since the day he became ill. The only times he has not had the regular care and attendance of licensed physicians was when he was on his way to consult specialists in the diseases with which he was afflicted. The evidence is overwhelming that Dr. Gann has not been able to perform any of the duties of his profession of physician and surgeon. Dr. Reed, who had seen him nearly every day since he became ill except when appellee was on trips in search of advice from specialists, testified positively that he has not done any practice at all and will not be able to do any.

Testimony was offered by appellant tending to show that appellee had resumed the practice of his profession, but this testimony was either denied or explained, and the verdict of the jury reflects this denial of portions of the testimony and explanation of other parts thereof was found to be true.

Appellant contends for a reversal of the judgment because the court instructed the jury as follows:

"In this case you will find for the plaintiff (appellee) unless you find from the evidence that the plaintiff (appellee) has not been under the regular care and attendance of a licensed physician other than himself for any period of time since October 22, 1936. You will lessen his claim at the rate of $200 per month for the length of time you may find from the evidence he was not under the care and attendance of a licensed physician other than himself. This does not necessarily mean the daily attendance of a physician, but such attendance by a physician as was reasonably necessary under the evidence.

"In this case if you find that he was treated by a regularly licensed physician as much as was reasonably necessary under the circumstances then your verdict should be for the plaintiff. If you find he was not you will deduct from his recovery for the period of time you find he was not under the attendance of a regular licensed physician."

Paragraph 25 of the policy provides that: "No indemnity will be paid for any period of disability during which the insured is not under the regular care and

attendance of a legally qualified physician other than himself.''

Appellant argues that the instruction should have been in the language of the agreement and assails the instruction given by the court because the court added ''reasonably necessary'' instead of using the words ''regular attendance.''

We do not think the language in the policy means that the insured should be under the regular care and attendance of a regularly qualified physician daily or at all times. It would be next to impossible for one to have the constant attendance of such a physician especially where it was necessary for him to go away to get the advice of a specialist on the particular disease with which he was afflicted. It is argued by appellant that appellee made a trip to Europe and other places and during the trip was not under the direct care of a physician other than himself and contends that on this account appellee was not entitled to recover anything for the time he was en route for the purpose of consulting specialists. This indeed would be a strict construction of the language used in the policy and we are not willing to adopt the construction appellant places upon the language in the policy. We are of opinion that the interpretation placed upon the language of the policy by the court as reflected by the instruction given was correct. This court said in the case of *Massachusetts Protective Ass'n* v. *Oden,* 186 Ark. 844, 56 S. W. 2d 425, that (quoting syllabus 1): ''Under an accident policy providing for the recovery of total disability only if 'necessarily confined within the house,' an insured who was totally disabled was not precluded from recovery because, under advice of physicians, he took frequent short automobile rides and a trip by train to the seashore for a change of climate.'' We quote from the body of the opinion in that case as follows: ''In other words, it is contended that he was not 'necessarily confined within the house.' This contention is based on the fact that appellee, under the advice of his physicians, took frequent short automobile rides, in favorable weather, for fresh air and sunshine; that he also, under the same advice, took a train trip to the sea-

shore at Corpus Christi, Texas, for a change of climate and for the salt air; and that he made an automobile trip to Monticello, Arkansas, to spend Thanksgiving with relatives and friends. This evidence, of course, shows that he was not confined within the four walls of his house for every minute of the day. But does it show such a break in confinement as to preclude a recovery as a matter of law? We do not think so, and we think the case is ruled on this point by the previous decisions of this court in *Great Eastern Casualty Co.* v. *Robins,* 111 Ark. 607, 164 S. W. 750, and *Interstate Business Men's Accident Association* v. *Sanderson,* 144 Ark. 271, 222 S. W. 51. In the former case the clause under consideration was, 'and shall necessarily and continuously confine him within the house'; while in the latter it was, 'that the disease shall compel the insured to remain continuously and strictly within the house,' etc. In the former, or Robins case, the trial court instructed the jury that 'a continuous confinement within the meaning of this instruction does not mean that the plaintiff, in order to be entitled to this benefit, must have actually been confined within the walls of a house every minute or hour,' and that 'the mere fact that he went out occasionally and at stated intervals for the purpose of taking exercise and fresh air, under the instructions of his physician, would not be sufficient to prevent plaintiff from recovering in this action.' This instruction was approved by this court. A number of cases from other courts are cited to the same effect. In the course of its opinion, the court said: 'The contract is couched in the language of the insurer, and it would be following too much the letter of it to say that temporary excursions from the house upon the advice of a physician for the purpose of treatment, take the case outside of the terms of the policy. That would be a very strained construction of the language of the policy, and would defeat its very purpose.' "

It seems that the policy sued upon lapsed for a time, but was reinstated. In the course of the examination of appellee appellant asked him questions that might tend to show that he made misrepresentations as to the condition of his health in obtaining a renewal of the policy. The

court refused to permit appellant to make proof to that effect under the general denial of his answer. He had not alleged in the answer that the renewal of the policy had been obtained through misrepresentations or fraud. We think that was an affirmative defense and should have been pleaded in the answer. We do not think a mere denial of each and every material allegation in appellant's answer entitled him to make proof that the policy was obtained through fraud or misrepresentation. That was new matter constituting a defense and should have been set out in ordinary and concise language in the answer. The fourth subdivision of § 1 of act 54 of the Acts of 1935 provides that "in addition to the general denial above provided for, the defendant must set out in his answer as many grounds of defense, counter-claim or set-off, whether legal or equitable as he shall have," and the third subdivision provides that a defendant "make a statement of any new matter constituting a defense, counter-claim or set-off, in ordinary and concise language, without repetition."

No error was committed in refusing appellant under the pleadings to make proof that the policy was obtained through misrepresentations or fraud because such a defense was not pleaded in the answer in addition to the general denial made by him.

No error appearing, the judgment is affirmed.