## COLORADO LIFE CO. v. STEELE.*
### No. 11289.

Circuit Court of Appeals, Eighth Circuit.
Feb. 2, 1939.

*Rehearing denied March 6, 1939.

R. H. Walker, of Denver, Colo., and W. V. Tompkins, Charles H. Tompkins and D. L. McRae, Jr., all of Prescott, Ark., filed for appellant.

W. F. Denman, of Prescott, Ark., and Tom W. Campbell, of Little Rock, Ark., filed for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an action brought by appellee as plaintiff below to recover on a health and accident policy. We shall refer to the parties as they appeared below. The policy bears date October 5, 1934, and contains, among others, the following provisions:

"Part Four—Sec. (A) Confining Sickness: If, as a result of sickness of the Insured he be so disabled as to be necessarily and continuously confined within the house and therein regularly visited by a physician, other than the insured or the insured's spouse, parent or child, at least once in each week and shall be necessarily prevented from performing any and every duty pertaining to his occupation, the insured shall be deemed totally disabled and the Company will pay for the period the Insured is necessarily and continuously so confined and so attended, the monthly indemnity shown in Part One hereof."

The indemnity under this paragraph was $200 per month.

There was a rider attached to the policy, referred to as "Lifetime Indemnity Rider," as follows:

"If, after the insured shall have been continuously totally disabled either from accident or sickness, and shall have received indemnity from the company for 12 consecutive months in case of illness or 24 consecutive months in case of accident, and the insured shall, at the expiration of such period, or within thirty days thereafter, furnish to the Company satisfactory proof that he, as a result of the accident or illness, for which indemnity has been paid, be then so disabled that he is thereby necessarily prevented from engaging in any work or occupation whatsoever for compensation, remuneration, gain or profit, and that as a result of such total disability, the Insured is necessarily and continuously confined within the house (other than that within which be his place of business) and that he be regularly attended therein by a duly licensed physician at least once a week, the Company will pay during the continuance thereafter of such total disability, confinement and attendance by the physician, so long as the Insured shall live, the indemnity shown in Part 1 of said policy."

The complaint alleged total disability commencing September 14, 1935 and continuing until the filing of the action April 2, 1938, and sought to recover $200 per month under the above quoted provisions of

the policy. Plaintiff asked judgment for $5,200 together with the statutory penalty of 12%, and a reasonable attorney's fee.

The answer admitted the execution of the policy, admitted that on or about September 14, 1935, the insured became disabled and that such disability continued up to January 12, 1936, for which disability defendant had paid him $800, together with $145 for hospital benefits and nurse's fees; that after January 12, 1936, insured was no longer totally disabled or confined to his house or regularly visited therein by a physician.

At the time of taking out this policy, plaintiff was an oil contractor, engaged in drilling oil wells and in buying and selling oil and gas leases. In August, 1935, he was attacked with acute arthritis, and went to a hospital in Prescott, Arkansas, where he remained until November 5, 1935, when he went to Hot Springs, Arkansas. He remained at Hot Springs until the early days of February, 1936, when he returned to his home at Rosston, Arkansas. Defendant paid the $200 monthly indemnity from the time insured was taken ill in August, 1935, until he left the hospital at Hot Springs, Arkansas, in 1936. Following his return from Hot Springs, he was constantly under the care of a physician, whom he visited at least once a month, but the physician did not visit the plaintiff at his home. It appears from the undisputed evidence that plaintiff transacted more or less business during the period for which recovery is sought, and that he traveled by automobile a great deal, and it is claimed that he was not totally disabled, as that term is used in the policy, and that he was not necessarily and continuously confined within the house, nor prevented from engaging in his occupation.

At the close of all the evidence, defendant moved for a directed verdict, which motion was denied, and the case was submitted to the jury upon instructions, to certain of which defendant saved exceptions.

On this appeal defendant urges that the court erred (1) in refusing defendant's motion for a directed verdict; (2) in certain instructions given to the jury; and (3) in denying certain instructions requested by defendant.

■ This is an Arkansas contract and the case was tried in Arkansas, and in determining the issues here we are governed by the law of that state as declared by its Supreme Court. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

As to plaintiff's physical condition, there is both medical and lay testimony. Dr. Buchanan, located at Prescott, Arkansas, treated plaintiff for arthritis beginning in August, 1935. The doctor, in his testimony, said:

"He had an acute inflammatory arthritis, which was a very painful thing. He has an ankylosis of all the joints of the hand—that is, a stiffness. The joints are united. You can't bend the joints at all. If you were to bend them, it would be just like breaking the bone. He can not bend his fingers, his hand or his wrist. He has more or less of a sub-acute arthritis now, that is a low grade of inflammation in the joints yet, even in his spine, and his left arm and shoulder are about the only joints that are not involved. I have seen him practically every week since February 1936, around every week. He is taking medicine now. I do not think he can do any kind of manual labor. In my opinion he is totally disabled insofar as doing the work of an oil contractor is concerned. I do not think he will ever be any better because he has an ankylosis—that is, a union of the joint.

"I advised Steele to get out as much as he could and be in the open and in the sunshine and really take a little exercise. It would help his joints, you might say, supple, better than sitting still. I think riding around some in an automobile would be a help to him rather than a hindrance. Mr. Steele did not ask me with reference to any special trip. He just asked me if it was all right for him to go places, and I told him as long as he had no pain and could make the trip to go ahead. He would always come by and get something to relieve the pain. * * *

"I told Steele to come to the office to see me, and that it was not necessary for me to go down there. Steele is incapacitated now just as much as when he was in the hospital, but is not having as much pain. I think the ankylosis or stiffness now is about what it was then."

Dr. Mendenhall testified that he attended the plaintiff in 1936; that he then had arthritis. He testified:

"I visited him at his home three or four times. When he was at home, he would come by my office once a week. It is about five miles from his home to my office. I don't think he is able to perform his duties as an oil well contractor. I prescribed

motion for his arthritis, and that he travel in his automobile. I advised him to take exercise and get out in his car. * * *

"I think it is good treatment for a man who is suffering from arthritis and who is already to some extent stiffened up and suffering pain from it, to get in an automobile and go from Waterloo, Arkansas to Cincinnati, Ohio."

Dr. Watkins, a dentist of some seventeen years' experience, testified that he met the plaintiff professionally in November, 1935; that at that time he had acute arthritis in his hand and shoulder, and to some extent in his feet and knees; that he removed certain of plaintiff's teeth; that plaintiff left his care about February, 1936. The doctor said: "His condition is now chronic. He unquestionably has some bone destruction there, and his condition is permanent."

Mr. Slagle, who had been in plaintiff's employ for some years immediately preceding the trial, testified that he did the plaintiff's clerical work and drove his car; that the plaintiff could not drive; that he helped dress plaintiff and prepared all his papers; that before plaintiff became disabled he drove his car himself, was very active and spent lots of time on the derrick floor, and handled heavy tools; that now he was helpless; that he looked after most of plaintiff's business for him and drove him various places.

Plaintiff testified as to his condition, and, among other things, said:

"I was insured as an oil contractor. My work required me to make contracts, see about the building of the derricks, be out all hours of the day and night, and sometimes have to make a hand and do part of the work myself. I have to hustle my own junk, drive a car, lift bits, pipe nipples and other pieces of equipment. I also have to see about the coring of the sands. I have to be all over the operation and upon the derrick floor. Now I can not get upon the derrick floor without assistance. I have not driven an automobile since September 1935. I can't be out nights at all, and damp weather bothers me. I have to be driven everywhere I go. I can not write to do much good—can barely write my name. I can not bathe or dress without help. My arm and hand are rigid and stiff. I can not bend the fingers at all. I can not do any work at all, and am in a helpless condition today and have been since September 1935. * * *

"I made some trips away from home but always with the permission of my doctor, Dr. Buchanan, and he would always give me medicine to take with me. * * * I made some trips out of the state but did so under Dr. Buchanan's orders. He said it was poison for me to stay in, and for me to get all the sunshine and air that I possibly could, and to be out. The Hot Springs doctors told me the same thing. All I ever did on the trips was just ride in the car, somebody else always did the driving."

There was other testimony relative to plaintiff's condition. It was shown that he made various automobile trips, accompanied by a driver, and that on some of these trips he transacted some business. As to these trips, he testified: "I made these trips mainly for my health because my doctors told me to get out. I have not made any purely business trips. * * * Every trip I made was to get out, because you don't know what it is to stay inside four walls for days and weeks at a time."

■ In considering the question of the sufficiency of the evidence, it is our province to determine whether or not there was substantial evidence to sustain the verdict. Pryor v. Strawn, 8 Cir., 73 F.2d 595; Chicago, B. & Q. R. Co. v. Kelley, 8 Cir., 74 F.2d 80; Columbian Nat. Life Ins. Co. v. Comfort, 8 Cir., 84 F.2d 291; Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492. As the jury has resolved the issues in favor of plaintiff, we must accept the testimony in his favor as true, and he is entitled to such reasonable favorable inferences as may fairly be drawn therefrom. Illinois Power & Light Corp. v. Hurley, 8 Cir., 49 F.2d 681; Philadelphia Storage Battery Co. v. Kelley-How-Thomson Co., 8 Cir., 64 F.2d 834. So considered, can we say that the verdict is without substantial evidence in its support?

The court instructed the jury as follows: "If you find from the testimony that the plaintiff was advised by a reputable physician or physicians that it was to the best interest of his health, the plaintiff's health, and particularly to the best interest of the treatment of the disease from which he, the plaintiff, suffered, that he take a reasonable amount of exercise and subject himself to fresh air and sunshine, and that they, the physician or physicians, encouraged automobile trips, and you further find that the plaintiff did take automobile trips and that such automobile trips

were in good faith in reliance upon the advice of his physician or physicians, then the court instructs you that even though he may have occasionally. on such trips transacted business, it was a compliance with the provisions of the policy providing that he must necessarily and continuously be confined in the house."

■ The Supreme Court of Arkansas has consistently given a liberal construction to the provisions of these policies which require that the insured be confined to the house and that he be there treated regularly by a physician. It has held that a continuous confinement, within this clause of the policy, does not mean that the insured must have actually been confined within the walls of his house, and that the mere fact that he went out occasionally, at stated intervals, for the purpose of taking exercise and fresh air under the advice of his physician, would not be sufficient to prevent recovery. Great Eastern Casualty Co. v. Robins, 111 Ark. 607, 164 S.W. 750; Interstate Business Men's Acc. Ass'n v. Sanderson, 144 Ark. 271, 222 S.W. 51; Interstate Life & Acc. Co. v. Lange, 190 Ark. 855, 81 S.W.2d 931; Massachusetts Protective Ass'n v. Oden, 186 Ark. 844, 56 S.W.2d 425; Ætna Life Ins. Co. v. Norman, Ark., 117 S.W.2d 728.

In Massachusetts Protective Ass'n v. Oden, supra, the Supreme Court of Arkansas, in considering a policy with clauses defining disability such as would necessarily confine within the house, said [page 426]: "For a reversal, appellant first insists that the evidence is insufficient to entitle appellee to recover. It admits that he is totally disabled, was so during the sixty weeks for which it paid up to August 1, 1931, and still is. But it says, in order for him to be entitled to recover under said rider for continuous disability, he must not only be totally disabled, but must be confined within the house as a necessary result of his sickness. In other words, it is contended that he was not 'necessarily confined within the house.' This contention is based on the fact that appellee, under the advice of his physicians, took frequent short automobile rides, in favorable weather, for fresh air and sunshine, that he also under the same advice took a train trip to the seashore at Corpus Christi, Tex., for a change of climate and for the salt air, and that he made an automobile trip to Monticello, Ark., to spend Thanksgiving with relatives and friends. This evidence of course shows that he was

not confined within the four walls of his house for every minute of the day. But does it show such a break in confinement as to preclude a recovery as a matter of law? We do not think so, and we think the case is ruled on this point by the previous decisions of this court in Great Eastern Casualty Co. v. Robins, 111 Ark. 607, 164 S.W. 750 and Interstate Business Men's Accident Association v. Sanderson, 144 Ark. 271, 222 S.W. 51."

In Ætna Life Ins. Co. v. Norman, supra, the opinion in which was handed down June 6, 1938, the insured was the owner of a large tract of land and the president and principal owner of a bank. He became disabled from the effects of arthritis and was unable to attend to his usual and customary duties as he did prior to his disability. He still went out to the farm every week in his automobile, which he sometimes drove himself, and he went to his office in the bank almost daily. In holding that the question of his total disability was a jury question, the court, among other things, said [page 730]: "So here, while appellee is not rendered absolutely helpless, by reason of the arthritic condition of his feet, the proof is quite substantial that it prevents him from performing acts necessary to the prosecution of his business in substantially the same way he had previously done so. On the whole, we think the evidence made a case for the jury and that the court did not err in refusing to direct a verdict."

■ The plaintiff here was a very active man prior to his illness, being active both physically and mentally. Under the advice of his physician, he did not at all times remain at home, and while out in the open air and being driven about the country more or less, he incidentally transacted some business, but the evidence is undisputed that his affliction prevented him from performing acts necessary to the performance of his business in substantially the same way he had previously done. The jury, we think, was warranted in finding, under the evidence and the law as established by the decisions of the Supreme Court of Arkansas, that plaintiff was, within the meaning of the policy, prevented from performing any and every duty pertaining to his occupation.

■ But it is said that the plaintiff was not entitled to recover, even though totally disabled, because the attending physician did not at all times visit him within his

house. We have already noted that under the decisions of Arkansas, it was not essential to plaintiff's right to recover that he be literally at all times confined within his home. It is undisputed that plaintiff was in fact under the care of a physician during all the time, and that he consulted his physician at least once a week. Instead of having the physician come to his home, he frequently went to the office of the physician, and this it appears was on the advice of his physician. On this question the court charged the jury that if the plaintiff was advised by his physician that it was for "the best interest of his health and to the best interest of the treatment of the disease from which he was suffering for him to drive in an automobile from his house to the doctor's office, rather than have the doctor come to his home," then that would be a sufficient compliance with the requirement that a physician regularly visit plaintiff at least once a week in the house. This construction, we think, finds support in the decisions of Arkansas and is in keeping with the spirit, rather than the letter, of the policy.

We have carefully considered the instructions given by the court, to which defendant saved exceptions, and believe they are all supported by the decisions of the Supreme Court of Arkansas. The instructions requested by defendant would, if given, have been equivalent to directing a verdict for defendant, and we have already held that defendant was not entitled, as a matter of law, to a directed verdict.

The judgment appealed from is therefore affirmed.