MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION *v.* MURPHY.

4-7861                                          193 S. W. 2d 305

Opinion delivered March 25, 1946.

946

*Malcolm W. Gannaway* and *Robert M. Gannaway,* for appellant.

*David L. Ford,* for appellee.

HOLT, J.   September 7, 1944, appellee, Tom B. Murphy, sued appellant, Insurance Company, on a health and accident insurance policy.

He alleged in his complaint that on March 14, 1940, appellant issued and delivered to him its policy of health and accident insurance under the terms of which appellant agreed to pay $80 per month for total disability necessitating total loss of time and which confined appellee within doors. The policy was made a part of the complaint. He further alleged that he became disabled and confined in April, 1941, from tuberculosis; that appellant paid appellee $80 per month from April, 1941, to July, 1944, at which time appellant ceased payments. It was further alleged that from July 1, 1944, until the filing of this suit, appellee had suffered total loss of time from work, had been totally disabled and confined within doors under the terms of the policy and that appellant was due appellee $80 per month from July 1, 1944, until the date of the trial.

Appellant answered with a general denial.

Upon a trial, June 8, 1945, the jury returned the following verdict: "We the jury find for the plaintiff full recovery in the amount of $80 per month from July 1, 1944, for total disability." Upon this verdict, judgment was entered in the amount of $880, 12% penalty, and for an attorney's fee in the amount of $250. This appeal followed.

The policy of insurance contained the following provisions: "Part K.   Confining Illness Benefits for Life. The Association will pay, for one day or more, at the rate of forty ($40) dollars per month for the first fifteen days and at the rate of eighty ($80) dollars per month thereafter for disability resulting from disease, the cause of which originated more than thirty days after the effective date of this policy, and which confines the

insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time. Part L. Non-Confining Illness Forty Dollars per Month. The Association will pay, for one day or more, at the rate of forty ($40) dollars per month, but not exceeding three months, for disability resulting from disease, the cause of which originates more than thirty days after the effective date of this policy, and which does not confine the insured continuously within doors, but requires regular medical attention; provided said disease necessitates total disability and total loss of time."

The record reflects that appellee became totally disabled from tuberculosis in April, 1941. Prior to that time, he had been engaged principally as a football coach and athletic director. He had a wife and three children and was about 35 years of age at the time this suit was tried.

May 1, 1941, appellant began paying appellee benefits in the amount of $80 per month under the terms of the policy. These payments were continued until February, 1942, when appellant ceased further payments. Thereupon, appellee brought suit against appellant in the Sebastian circuit court, Fort Smith District, to recover monthly payments alleged to be due under the terms of the policy, and on June 22, 1942, upon a jury trial, there was a verdict in favor of appellee for monthly payments in the amount of $80 per month from February 1, 1942, to date of trial. On the verdict, judgment was entered against appellant in the amount of $400, together with 12% penalty and an attorney's fee of $150. There was no appeal from this judgment.

After paying this judgment, appellant renewed payment of the monthly benefits for total disability in the amount of $80 per month which it continued to pay until July 1, 1944, at which time appellant again ceased to make further payments, whereupon appellee brought the present suit.

For reversal, appellant first argues that the testimony was not sufficient to support the jury's verdict. Specifically, it is appellant's contention that before appellee would be entitled to recover benefits under the provisions of the policy, *supra,* he must show that "the disease continuously confines him within doors and requires the regular visits therein by a regularly qualified physician; the disease necessitates total disability, and the disease necessitates total loss of time," and that appellee has failed to make such showing. It is practically undisputed here that appellee has had active tuberculosis since 1941 when he was admitted to the State Sanatorium in Booneville, and that his condition on the date the present suit was tried, showed no improvement. Two eminent physicians so testified. Dr. J. D. Riley, Superintendent and Medical Director of the State Tuberculosis Sanatorium at Booneville testified that he first met appellee April 30, 1941, when he examined him. "I examined him and found that he had tuberculosis and advised his admission to the Sanatorium. . . .Q. Doctor, you testified in this case on June 22, 1942? A. I did. Q. At that time, state whether or not Mr. Murphy was an inmate of the institution of the Sanatorium. A. He was a patient of the Sanatorium at that time. Q. How long did he continue to be confined in the Sanatorium? A. He was confined at the Sanatorium until April 19, 1943, when he was permitted to leave on an extended leave of absence. . . . I explained to Tom that if he could have adjusted himself mentally to taking the cure that I would have preferred that he remain in the Sanatorium in bed, which he had done for about nine months, at the end of which time he was not in as good condition as before. Even though he had not taken physical exercise he could not rest mentally, and his mental anguish prevented improvement, and I believed that some liberties on his part outside of the institution and mild activities were necessary for the condition of his mind."

Beginning with May, 1941, and up to and including May 20, 1945, Dr. Riley made twenty-three X-ray pictures of appellee's lungs. In 1941, three pictures were made in

May, one in July, one in September, one in December, and in 1942, one in February, one in April, one in June, one in August, one in November, and in 1943, one in January, one in March, one in April, one in June, one in August, one in October, and in 1944, one in January, one in April, one in August, and one in October, and in 1945, one in January and one in May. In explanation of the picture made May 20, 1945, a few days before the trial, Dr. Riley testified: "Q. Now, compare the last picture with the one you made June 2, 1942, and tell the jury what change, if any, has taken place in his condition, either for the better or worse. A. This (inserting picture) is his picture taken in June of 1942. You see the elevation of the diaphragm. Now, if you will look at this white marking in the upper part of the picture here, comparing this area of the dark with the better lung tissue, and then if you will look at this (inserting another picture) you will see that the white marking remains there just the same, with no essential change. His condition so far as his lungs are concerned is about the same that it was in June of 1942, but his general condition is much unimproved because of the development in the meantime of paralysis agitans. . . . This, his last picture, was taken May 20, '45, and shows no apparent change, but shows far advanced tuberculosis and the paralysis of the right diaphragm. . . . In my opinion he is totally and permanently disabled."

Dr. W. F. Rose corroborated Dr. Riley's testimony. It was his opinion that appellee was totally and permanently disabled and that his condition at the time of the trial was a great deal worse than when he saw appellee a year ago.

It is undisputed that about a year prior to the date of trial, appellee procured a contract with a life insurance company to sell insurance and opened an office in Fort Smith, across the hall from that occupied by Dr. Rose. It also appears in the testimony of H. R. Parker, representative of appellant, that appellee, Murphy, sold insurance for apellant while being paid by appellant $80 per month for total disability. Quoting from appellant's

brief: "He (H. R. Parker) testified that appellee had a contract with appellant in 1941 and 1942 and wrote some insurance for appellant while he was being paid eighty ($80) dollars per month by appellant. . . . That in paying appellee at the time he was trying to write a little insurance that he was trying to assist appellee."

Appellee's territory with the Life Insurance Company covered thirteen counties and he managed to sell a number of policies, substantially supplementing his income over the monthly payments from appellant. During all of this time, he was under the care of Dr. Riley. Dr. Rose testified that for twelve months prior to the date of trial, he had seen appellee professionally once or twice a week.

It thus appears from the above abstract of the testimony that prior to the time that appellee contracted tuberculosis, his vocation was that of athletic director and football coach which required that appellee be both physically and mentally active. He can no longer follow his vocation. After some nine months of confinement in the sanatorium, upon the advice of his physician, he was permitted to leave the hospital for the reason that appellee's "mental anguish prevented improvement, and I believed that some liberties on his part outside of the institution and mild activities were necessary for the condition of his mind." Does the fact that appellee, although suffering from a total disability, was not continuously confined within doors, and sold some insurance, prevent recovery under "Part K" of the insurance contract presented here? We think not. It is our view that on the facts presented and the law governing, the jury was warranted in finding in favor of appellee.

In the recent case of *North American Accident Insurance Company* v. *Branscum, ante,* p. 579, 191 S. W. 2d 597, we again announced the following rule: "The rule prevailing in most jurisdictions is that the 'total disability' contemplated by a sickness or accident insurance policy, or the disability clause of a life insurance policy, does not mean, as its literal construction would require, a state of absolute helplessness, but contemplates rather

such a disability as renders the insured unable to perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner.''

The principles of law announced in the well considered case of *Colorado Life Co.* v. *Steele,* 101 Fed. Rep., 2d 448, an Arkansas case which was decided by the Circuit Court of Appeals, 8th Circuit, February 2, 1939, apply with equal force, we think, to the present case. The facts in that case are in effect similar to those presented here, and the Court based its decision largely on our own cases. The insurance policy there involved provided: "Part Four—§ (A) Confining Sickness: If, as a result of sickness of the insured he be so disabled as to be necessarily and continuously confined within the house and therein regularly visited by a physician, other than the insured or the insured's spouse, parent or child, at least once in each week and shall be necessarily prevented from performing any and every duty pertaining to his occupation, the insured shall be deemed totally disabled and the Company will pay for the period the insured is necessarily and continuously so confined and so attended, the monthly indemnity shown in Part One hereof. The indemnity under this paragraph was $200 per month.'' In construing the effect of this provision, the court, among other things, said: ''The Supreme Court of Arkansas has consistently given a liberal construction to the provisions of these policies which require that the insured be confined to the house and that he be there treated regularly by a physician. It has held that a continuous confinement within this clause of the policy, does not mean that the insured must have actually been confined within the walls of his house, and that the mere fact that he went out occasionally, at stated intervals, for the purpose of taking exercise and fresh air under the advice of his physician, would not be sufficient to prevent recovery. *Great Eastern Casualty Co.* v. *Robins,* 111 Ark. 607, 164 S. W. 750; *Interstate Business Men's Acc. Ass'n* v. *Sanderson,* 144 Ark. 271, 222 S. W. 51; *Interstate Life & Acc. Co.* v. *Lange,* 190 Ark. 855, 81 S. W. 2d 931; *Massachusetts Protective Ass'n*

v. *Oden*, 186 Ark. 844, 56 S. W. 2d 425; *Aetna Life Ins. Co.*
v. *Norman*, 196 Ark. 381, 117 S. W. 2d 728. . . . In
*Aetna Life Ins. Co.* v. *Norman, supra,* the opinion in
which was handed down June 6, 1938, the insured was the
owner of a large tract of land and the president and prin-
cipal owner of a bank. He became disabled from the ef-
fects of arthritis and was unable to attend to his usual
and customary duties as he did prior to his disability.
He still went out to the farm every week in his automo-
bile, which he sometimes drove himself, and he went to
his office in the bank almost daily. In holding that the
question of his total disability was a jury question, the
court, among other things, said (117 S. W. 2d, p. 730):
'So here, while appellee is not rendered absolutely help-
less, by reason of the arthritic condition of his feet, the
proof is quite substantial that it prevents him from per-
forming acts necessary to the prosecution of his business
in substantially the same way he had previously done so.
On the whole, we think the evidence made a case for the
jury and that the court did not err in refusing to direct
a verdict.'

"(5) The plaintiff here was a very active man prior
to his illness, being active both physically and mentally.
Under the advice of his physician, he did not at all times
remain at home, and while out in the open air and being
driven about the country more or less, he incidentally
transacted some business, but the evidence is undisputed.
that his affliction prevented him from performing acts
necessary to the performance of his business in substan-
tially the same way he had previously done. The jury,
we think, was warranted in finding, under the evidence
and the law as established by the decisions of the Supreme
Court of Arkansas, that plaintiff was, within the meaning
of the policy, prevented from performing any and every
duty pertaining to his occupation. (6) But it is said that
the plaintiff was not entitled to recover, even though
totally disabled, because the attending physician did not
at all times visit him within his house. We have already
noted that under the decisions of Arkansas, it was not
essential to plaintiff's right to recover that he be literally

at all times confined within his home. It is undisputed that plaintiff was in fact under the care of a physician during all the time, and that he consulted his physician at least once a week."

Appellant next says that the trial court held that the judgment of June 22, 1942, *supra*, "raised a presumption that total disability of appellee continued from June 22, 1942, and that this presumption was in force at the time of the trial of this cause on June 8, 1945, and that the burden of proof, therefore, was upon appellant here to prove that appellee was not at the time of the trial of this cause disabled, and the court, over the objections and exceptions of appellant, gave the following instruction on the burden of proof: "Instruction No. 4—You are instructed that the plaintiff has introduced in evidence the testimony supporting the former adjudication of this cause on June 22nd, 1942. The burden now shifts to the defendant to establish by a preponderance of the testimony that the plaintiff has recovered from total disability subsequent to the former adjudication. If the defendant fails to do this, then your verdict should be for the plaintiff."

Error is thus assigned in the giving of this instruction. We cannot agree that any error appears. The rule appears to be that in the absence of a contrary showing, the presumption is that appellee was totally disabled on the date of the first judgment, June 22, 1942, *supra*, and at all times subsequent thereto unless proof of subsequent recovery be shown, and when appellee here introduced evidence of the June, 1942, judgment, the burden shifted to appellant to show subsequent recovery. We hold that this rule applies to total disability whether caused by disease or accident.

The court had already given the following instruction No. 1: "The burden of proof is upon the plaintiff to make out his case by a preponderance of the evidence."

Instruction No. 4 complained of was clearly warranted, we think, under the decision of this court in *Equitable Life Assurance Society* v. *Bagley,* 192 Ark. 749, 94 S. W. 2d 722, wherein we said: "The court's finding of fact as

approved by us on former appeal, that appellee was totally disabled in the purview of the contracts of indemnity on August 19, 1933, is conclusive and binding on this appeal. (Citing many cases.) . . . Since we are concluded by the former opinion on the question of appellee's total disability on August 19, 1933, the legal query arises, What presumption attends such finding on future circumstances? The rule seems to be that, in the absence of proof to the contrary, it must be presumed that appellee was totally disabled on August 20, 1933, and that at all times subsequent thereto unless and until it is made to appear affirmatively, by testimony, that appellee has recovered subsequent to the former adjudication. See 10 R. C. L., p. 872, § 15. In view of the stated declaration of law it follows that, after appellee introduced in evidence the testimony supporting the former adjudication, the burden shifted to appellant to establish by a preponderance of the testimony that appellee had recovered from total disability subsequent to the former adjudication.''

Finally appellant insists that the court erred in giving instructions, 1, 2 and 3 at the request of appellee for the reason that ''they leave out of account entirely the question of medical attention, confinement within doors and loss of time from work which are required by Part 'K' of the policy.'' These instructions are as follows: ''Instruction No. 1—You are instructed that if you find from the testimony that the plaintiff, Tom B. Murphy, was advised by a reputable physician or physicians, that it was to the best interest of plaintiff's health, and particularly to the best interest of the treatment of the disease from which he, the plaintiff, suffered that he take a reasonable amount of exercise and subject himself to fresh air and sunshine and that they, the physician or physicians, permitted automobile trips and you further find that plaintiff did take automobile trips and that such automobile trips were in good faith in reliance upon the advice of his physician or physicians, then the court tells you that even though he may have occasionally on such trips or visits transacted business, it was in compliance with the provisions of the policy providing that he must necessarily and continuously be confined in doors,

and your verdict should be for the plaintiff. Instruction No. 2—You are instructed that the plaintiff is not entitled to recover merely by showing that he is afflicted with some disease or condition which causes pain or suffering. In order to recover under the policy, upon which he sues, the plaintiff must show by a preponderance of the evidence that his disease disables him to the point where he is unable to perform all of the material and substantial duties of his occupation. Instruction No. 3—You are instructed that to come within the meaning of the contract of indemnity, it is not required that the insured, the plaintiff, shall be absolutely helpless, but he is totally disabled when the infirmity from which he suffers renders him unable to perform all the substantial and material acts of his business or the execution of these acts in the usual and customary way.''

An instruction almost identical with No. 1, *supra,* was approved in the *Colorado Life Co.* v. *Steele, supra,* and we think was a correct declaration of the law as applied to the facts here. Instructions 2 and 3 were approved by this court in *Mutual Life Insurance Company of New York* v. *Dowdle,* 189 Ark. 296, 71 S. W. 2d 691, in circumstances similar in effect to those presented here. These instructions, we think, are a correct declaration of the law on the facts and provisions of ''Part K'' of the policy here in question when read in connection with instructions numbered 5, 10, 11 and 15, given at appellant's request. ''Instruction No. 5—You are instructed that the plaintiff and defendant in this case are both bound by the terms of the policy sued on herein, and before any recovery can be had on the part of the plaintiff he must have proven, by a preponderance of the evidence, that he is entitled to the benefits sued for under the terms and conditions of the policy which is in evidence and on which he relies for a recovery. Instruction No. 10—The policy provides: 'This policy does not cover death disability or other loss . . . while the insured is not continuously under the professional care and regular attendance, at least once a week beginning with the first treatment, of a licensed physician or surgeon other than himself,' and

956

you are instructed that this provision of the policy is binding on the plaintiff and a condition precedent to his recovery, and if he has failed to prove that his disability comes within the above provision of the policy, then and in that event he cannot recover, and your verdict must be for the defendant. Instruction No. 11—(as modified) You are instructed that even though you believe from the evidence in this case that the plaintiff has been totally disabled within the meaning of the insurance policy during the period sued on, and that during said period of time he has required regular medical attention at least once a week, and that he has sustained total loss of time, yet if you further believe from the evidence that he has not been confined continuously within doors within the meaning of the insurance policy, as heretofore defined by other instructions, then and in that event plaintiff would only be entitled to recover at the rate of $40 per month for a period of not exceeding three (3) months. Instruction No. 15—In determining the questions, of the disability, confinement of, and loss of time by plaintiff due to disease, you are instructed that you cannot consider any disease except tuberculosis.''

On the whole case, finding no error, the judgment is affirmed.