## LUMBERMENS MUTUAL CASUALTY COMPANY
### *v.* STACEY EVERETT HOWELL

5-5290                                        455 S. W. 2d 849

Opinion delivered June 2 , 1970

*Leroy Froman,* for appellant.

*Comer Boyett, Jr.* and *C. E. Blackburn,* for appellee.

GEORGE ROSE SMITH, Justice. This is an action brought by the appellee to collect total disability bene-

fits under an accident and sickness policy issued by the appellant. The case was submitted to a jury, which returned a verdict for the plaintiff in the amount sued for, $2,694.58. The appellant argues three points for reversal, which we will discuss separately after briefly stating the background facts.

Howell had been actively engaged in farming, but in 1968 he took a job as a construction worker to earn extra money. On May 4 of that year, while Howell was lifting a heavy bucket of fresh mortar, he injured the upper or cervical vertebrae in his neck, resulting in total disability as we have defined that term. *Mutual Benefit Health & Acc. Assn.* v. *Murphy,* 209 Ark. 945, 193 S. W. 2d 305 (1946).

In 1963 Howell had undergone surgery to correct two ruptured and degenerative discs in the lower or lumbar part of his back. That operation having been disclosed to the insurer, the present policy was issued with an exclusionary rider reading in part as follows:

> To induce the . . . Company to issue . . . its Policy . . . notwithstanding the fact that I have heretofore suffered from degenerative and extruded discs I hereby agree that no indemnity of any kind or amount shall be payable to me or to my beneficiary under said Policy for loss which results wholly or partly, directly or indirectly, from said condition, any complication thereof, treatment or operation therefor in any form.

In instructing the jury the trial court construed the foregoing rider to refer only to the earlier disc trouble in Howell's lower back and not to exempt the defendant from liability for the later injury to degenerative discs in the claimant's neck. The appellant argues that the wording of the rider was sufficiently ambiguous to require that its interpretation be submitted to the jury.

We agree with the trial court, for either of two reasons. First, we perceive no ambiguity. The rider

recites that Howell has "heretofore suffered" from degenerative and extruded discs. The waiver goes only to liability for a loss resulting "from said condition." To extend the exemption to some similar condition that might arise in the future in a different part of the insured's body would be to read something into the language of the rider - that is not there. Since there is no ambiguity in the wording of the contract, the court was right in refusing to submit such an issue to the jury. *Clements* v. *Fuller*, 209 Ark. 849, 192 S. W. 2d 762 (1946).

Secondly, even if the appellant's argument be accepted the exemption from liability is for a loss resulting from degenerative *and* extruded discs. The undisputed medical evidence shows that the discs that were injured when Howell lifted the bucket of mortar were degenerative, but they were not extruded or ruptured. Hence when the policy is construed against the insurer, even a finding of ambiguity would not be sufficient to relieve the appellant of liability in this case.

Next, the policy defines injury as bodily injury resulting from an accident and occurring directly and independently of all other causes. The company argues that the present claim is not covered, because the accident activated a dormant disc condition that contributed to Howell's total disability. We have often held, however, that if the accidental injury is the primary and proximate cause of the disability, it is immaterial that a pre-existing disease is also a contributing factor. See *Union Life Ins. Co.* v. *Epperson*, 221 Ark. 522, 254 S. W. 2d 311 (1953), where several of our cases are discussed.

Finally, the appellant contends that its cross-examination of Howell's wife was unduly restricted by the trial court. Mrs. Howell testified on direct examination that after her husband was injured she had to go back to work in Searcy to help support the family, which included five children under the age of eighteen. We quote all that appears in the record with respect to

the asserted restriction upon counsel's cross-examination of the witness:

> Q. Mrs. Howell, you said you had to go to work after this injury. Are you saying you all haven't had any income since May 4, 1968, on a weekly basis?
>
> A. Well . . .
>
> Q. I am just asking you "yes" or "no"?
>
> A. Well, except . . .
>
> (Off the record discussion.)
>
> The Court: (For the record) The attorney for the defendant wishing to show proof that the plaintiff was drawing workmen's compensation on the theory that it was in rebuttal to this witness's testimony that she had to go to work, the Court holds the evidence is not admissible, to which the defendant objects and saves his exceptions.

It is now argued that Howell's receipt of workmen's compensation payments was admissible as a basis for an attack upon Mrs. Howell's credibility. The appellant states the point in these words in its brief: "The jury was therefore left with the erroneous impression that the Appellee and his family had not received any income during the period since May 4, 1968 because of his alleged injury and his wife had been forced to go to work."

Upon the meager record that was made below we cannot see how Mrs. Howell's credibility was even remotely in issue. Her statement that she had gone back to work is not disputed either by any other witness's testimony or by any offer of proof. It will be noted from our quotation from the record that Mrs. Howell did not deny at any point that the family had been receiving a weekly income. She was actually not given

an opportunity to finish her answer to that inquiry. So the only possible question that could have been raised about her credibility- would have been an argument that the amount of workmen's compensation being received was so large as to demonstrate- that there was no real need for her to go back to work. But there is no offer of proof, or even any suggestion, of how much the supposed payments amounted to. Under- the statute the range lies between a minimum of $10 a week and a maximum of $38.50 a week. Ark. Stat. Ann. § 81-1310.1 (Supp. 1969). We certainly cannot say as a matter of common knowledge, without proof, that either $10 a week or $38.50 a week is enough to support a family of seven. Absent such proof, there is no basis for saying that the trial court abused his wide discretion in controlling the extent of counsel's right to. cross examine a witness upon a collateral matter. *St. Louis, I. M. & S. Ry. v. Kelley*, 61 Ark. 52; 31 S. W. 884 (1895). This is- especially true in view of the record's silence about what was said during the off-the-record discussion.

Affirmed. We allow the appellee an attorney's fee of $500 for the services of counsel in this court.